**UNITED STATES of America, Plaintiff,**

v.

**Robert A. STEELE, Defendant.**

**Crim. No. 91–94.**

United States District Court,
N.D. West Virginia.

April 3, 1992.

Thomas O. Mucklow, Asst. U.S. Atty., Wheeling, W.Va., for plaintiff.

Rocco Mazzie, Clarksburg, W.Va., for defendant.

## ORDER

MAXWELL, Chief Judge.

On December 16, 1991 this Court referred the above-styled criminal action to United States Magistrate Judge John W. Fisher, II pursuant to 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) with directions to submit to the Court proposed findings of fact and a recommendation for disposition of pre-trial motions. On January 27, 1992 Magistrate Judge Fisher filed his Proposed Findings of Fact and Recommendation for Disposition. The parties were directed pursuant to 28 U.S.C. § 636(b)(1) to file with the Clerk of Court any written objections within ten (10) days after being served with a copy of the Proposed Findings of Fact and Recommendation for Disposition. In accordance with this directive, Defendant on February 12, 1992 filed timely objections to the Proposed Findings of Fact and Recommendation for Disposition. The United States filed no response to the objections.

Upon a thorough examination of the objections filed by Defendant, it appears to the Court that Defendant has not raised any issues that were not thoroughly considered by Magistrate Judge Fisher in his Proposed Findings of Fact and Recommendation for Disposition. Moreover, the Court, upon an independent, *de novo* review of all matters now before it, including review of the tapes of the suppression hearing and examination of both parties' exhibits, is of the opinion that the Proposed Findings of Fact and Recommendation for Disposition accurately reflects the law applicable to the facts and circumstances before the Court in this case.

Magistrate Judge Fisher detailed the factual background of this matter at length in the Proposed Findings of Fact and Recommendation for Disposition; therefore, a new recitation is unnecessary. Facts brought out at the hearing will be repeated only to the extent necessary to apply the controlling legal precedent.

Defendant presents a two-pronged challenge to the Proposed Findings of Fact and Recommendation for Disposition: 1) The investigating officers were not justified in making a warrantless search of Defendant's residence; and 2) Even if the search that took place was justified, the incriminating evidence discovered was not in plain view under the rationale of *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), and could not form the basis for a valid, subsequent search with a warrant. The Court will discuss these arguments in reverse order.

Defendant premises the argument that the marijuana plants were not openly visible upon the testimony of Deborah Devericks. Specifically, Ms. Devericks testified to the following: 1) The marijuana plants on the shelf were always screened by framed pictures on a higher shelf in order to hide the plants from Ms. Devericks' younger siblings and from a cat which lived at the residence; 2) The plants on the

shelf were hidden on the upper shelf when she left the residence that evening; and 3) Officer Marple indicated to her that the officers had discovered a marijuana plant approximately two feet in height, which would indicate that the officers had searched a hidden box containing larger plants than those growing on the shelves. Upon a review of this testimony, the Court finds Ms. Devericks' assertions neither credible nor particularly relevant.

Initially, it should be noted that Ms. Devericks has a personal interest in the outcome of these proceedings. She may be romantically involved with the Defendant and apparently lives at the residence in question. Also, her testimony, and the circumstances under which the plants were allegedly discovered, directly incriminated her in an apparent violation of federal narcotics laws. While these facts do not compel the Court to wholly disregard her testimony, it certainly affects the weight given to her claims.

Additional factors diminish the credibility of this testimony. Regarding the alleged indication of size by Officer Marple, none of the three other witnesses present during this incident were called by Defendant. While their youth undoubtedly factored into this decision, the Court does not believe that youth alone would prevent Defendant from calling witnesses with relevant, exculpatory testimony. More importantly, assuming that Officer Marple in fact did indicate that a large plant was discovered, the Court is not convinced that this fact would invalidate the subsequent search. Discovery of the smaller plants in plain view would easily justify issuance of a warrant, notwithstanding the discovery of additional plants not in plain view. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (Announcing the "inevitable discovery doctrine", whereby evidence initially discovered through misconduct will be admitted if, by a preponderance of the evidence, it is shown that the evidence would have been discovered through legal means); *United States v. Whitehorn,* 813 F.2d 646, 649–50 (4th Cir. 1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 931 (1988) (Applying the inevitable discovery doctrine to allow admission of evidence seen during illegal search, some of which was included in a warrant affidavit, when sufficient independent information existed to support issuance of a valid warrant).

Ms. Devericks' testimony regarding the concealment of the smaller plants does not convince the Court that the plants were not openly visible when the officers swept the apartment. First, the officers, testifying separately and out of the presence of each other, gave consistent accounts of the discovery of the plants. Each testified that the egg carton and jug were unconcealed and easily visible to a passerby, and that the officers did not move or otherwise alter the condition of the evidence at the time of the initial discovery. Second, it is uncontested that Defendant was in the bedroom after Ms. Devericks left the apartment, when the police arrived, and during the standoff with the police officers. Accordingly, any prior efforts of concealment would not necessarily indicate that the plants remained concealed at all times. Finally, it is not seriously disputed that Deputy McAtee and Officer Marple secured the apartment, that no one entered or left during the issuance of the warrant, and that Plaintiff's photographic exhibits accurately reflect the location of the plants at the time of the execution of the warrant. Therefore, this Court is satisfied that, assuming that the officers were validly on the premises at the time of their initial discovery, the plants growing in the egg carton and the milk jug were plainly visible within the meaning of *Arizona v. Hicks.*

■ The question of the propriety of the officers' warrantless search of the Defendant's residence is, in the opinion of the Court, a much closer question. It is beyond dispute that warrantless searches are disfavored and generally invalid, absent the existence of an exception to the warrant requirement. Although counsel for Defendant in his original Memorandum of Law and Argument in Support of Motion to Suppress, which was expressly incorporated into the Objections to the Proposed Findings of Fact and Recommendation for

Disposition, initially contended that the search was an invalid search incident to arrest, the parties have subsequently focused their arguments on the existence of exigent circumstances justifying a warrantless search. In particular, the focus rests on the protective sweep exception to the warrant requirement as most recently discussed in *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

The *Buie* decision justified a cursory, warrantless search of a residence after a valid arrest of a suspect in those premises if the arresting officers possess a reasonable belief based on specific and articulable facts that an individual in the area poses a danger to those at the arrest scene. *Id.* at 334–36, 110 S.Ct. at 1098–99. In light of the validity of such a search, any incriminating evidence in plain view would be admissible under *Hicks*. The parties do not seriously contest the applicability of this principle to the present facts; namely, a search of a residence following a valid arrest outside of the premises. To the extent that any such dispute in fact exists, the Court holds that the *Buie* principle is applicable to this case. *See Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (justifying a limited, cursory search of an automobile under this standard during a traffic stop); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (justifying a "frisk" of a person's clothing during an on-the-street encounter if the standard is met); and *United States v. Hoyos*, 892 F.2d 1387, 1395–99 (9th Cir. 1989) (upholding a warrantless search of a house following an arrest in the adjoining yard).

Defendant argues that any reasonable threat to the officers' safety ended upon his arrest approximately ten feet outside his apartment. Defendant premises this argument upon the claim that the officers cannot point to articulable facts supporting the concern that a person remained inside the apartment and posed a continuing threat to their safety. Upon careful review of the suppression hearing, the Court is able to discern many facts justifying a reasonable belief that a possible risk resided in the apartment.

The officers involved in this incident escorted Ms. Devericks to the residence to diffuse a domestic violence situation. While there, the officers agreed to transport Ms. Devericks, her sister, and her twin brothers to another residence. The officers at no time searched the apartment for other people or viewed the entirety of the apartment. Apparently, a young male was also present in the apartment at the time. Both officers independently testified to the presence of this unidentified person and described him in similarly vague terms. Ms. Devericks testified that the young man had left before the arrival of the officers. Nevertheless, the Court is convinced that the young man was initially present, based on the officers' independent testimony and identification.

Another conflict exists regarding the witnesses' knowledge of the unidentified male's departure. Deputy Martin testified that he did not know whether the young man left, although he subsequently speculated under cross examination that he departed when Ms. Devericks and her siblings left. Officer Marple testified that he sent the man home before departing with the four Devericks. Ms. Devericks stated that, upon leaving, she informed Officer Marple that only the Defendant remained in the apartment. However, Defendant was not able to discredit Deputy Martin's testimony that he simply did not know whether the young man remained in the apartment. Importantly, Deputy Martin was the officer initially responding to the incident giving rise to Defendant's arrest and was, according to Officer Marple, the officer who led the entry into the residence.

The following events indisputably took place: 1) Upon resolution of the domestic dispute, Officer Marple began transporting the Devericks to another residence while Deputy Martin moved his vehicle a short distance away and completed paperwork regarding the incident; 2) After a brief period of time, Deputy Martin's attention was attracted by the sound of a gunshot; 3) He looked in his rearview mirror and saw an "individual"/"somebody" standing in front of Defendant's apartment holding a rifle; 4) At this time, Deputy Martin

heard "voices" yelling; 5) He informed other officers of the incident, to which Officer Marple responded; 6) While approaching the residence, Deputy Martin briefly lost sight of the scene; 7) Martin subsequently saw the Defendant fire a shot into the air before running into the apartment; 8) Martin, subsequently joined by Marple, engaged in a brief standoff with Defendant during which he did not comply with their orders to surrender; 9) During this confrontation, the officers could not see the entire interior of the apartment; 10) The officers could see that Defendant was in an interior room, subsequently discovered to be the bedroom; 11) Defendant eventually surrendered, exiting the residence without the weapon; 12) The officers placed him under arrest, secured the prisoner, and approached the apartment; 13) Deputy Martin and Officer Marple entered the apartment with their weapons drawn and proceeded to search the interior; 14) Upon discovering the weapon partially concealed in a closet in the bedroom, Martin secured the weapon while Marple searched the remaining rooms; and 15) Upon preparing to exit the apartment, the officers discovered the marijuana plants.

The Court is absolutely convinced that the above justifies a reasonable inference that a danger may have existed in the interior of the apartment. The officers had not previously inspected the back rooms of the apartment. A loaded, functioning weapon was known to be present in the rear portion of the residence. Both officers reasonably suspected that alcohol, with its known effects upon people, had been consumed by the occupants of the apartment. Deputy Martin, the officer apparently in charge of the situation, did not know that the unidentified male had left the residence. Even if he had, there had been a brief period during which a person could have arrived at the apartment unobserved by the officers. Martin did not see the intended target of the original shot, could not initially identify the gunman, and could not identify the voices heard during the incident. While his subsequent observations most logically indicated that it was the Defendant, standing in front of the apartment, who fired the first gunshot, this conclusion is not compelled by the evidence.

Additionally, the officers' actions indicate that the search was not solely intended to uncover evidence, as contended by Defendant. Both officers testified that they entered the residence to secure the weapon and prevent its use against them. The fact that they did not view this possibility as especially likely is not dispositive of the legality of the search. They entered with their weapons drawn, testified to having conducted a "sweep search" pursuant to their police training, and Officer Marple continued the search while the weapon was being secured by Deputy Martin. While this evidence does not necessarily tend to prove the reasonableness of the apprehension of attack, it does rebut Defendant's argument that the search was merely a pretext to search for evidence.

Based upon the above, in addition to the analysis contained in Magistrate Judge Fisher's findings, it is

ORDERED that Magistrate Judge Fisher's Proposed Findings of Fact and Recommendation for Disposition be, and the same is hereby, ACCEPTED and ADOPTED as augmented by this Order. Accordingly, it is

ORDERED that Defendant's Motion to Suppress be, and the same is hereby, DENIED.