UPON REHEARING EN BANC
JAMES W. HALEY, JR., Judge.
This matter comes before the Court from a divided and unpublished panel decision rendered on March 14, 2006 and reported as Williams v. Commonwealth, 06.Vap UNP 0843051 (2006). By order of March 21, 2006, that panel decision was stayed, and a petition for rehearing en banc granted.
I.
Christopher Allen Williams, found guilty of possession of a firearm by a felon under Code § 18.2-308.2, asserts the trial court erred in denying his motion to suppress the firearm seized by police. We affirm.
II.
Initially we note, with respect to our review of a motion to suppress, “we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.” Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citing Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923-24 (2000)).
Furthermore, “[s]ince the constitutionality of a search and seizure under the Fourth Amendment involves questions of law and fact, we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements.” Id. at 672-73, *443 594 S.E.2d at 598 (citing McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001)).
III.
On August 20, 2004, Sergeant Jeremy Barnett of the James City County Police Department was informed that appellant was staying with a girlfriend at 206-C Burton Woods Drive in that county. Records show that an apartment at that address was rented to Tara Bowman, and the appellant was not a tenant under the lease. Sergeant Barnett had in his possession two arrest warrants for appellant, one a capias from the Juvenile and Domestic Relations District Court of James City County and the other a show cause from the circuit court of that county.
206-C Burton Woods Drive is located in a two-story apartment complex, with both “upstairs” and “downstairs” apartments. The apartment here involved is an “upstairs” apartment, that is, there is a front door, which opens upon a stairway leading directly to the second floor where the rooms are actually located. A banister is situated at the top of the stairs.
Sergeant Barnett knocked on the front door of the apartment at approximately 9:20 p.m. on the 20th. Ms. Bowman opened the door, and Sergeant Barnett asked if he could enter. Ms. Bowman said he could, but asked him to delay coming upstairs so she could put on additional clothing. She shut the door. Two or three minutes later she returned and advised Sergeant Barnett that she had spoken with her brother, a Newport News police officer, who advised her not to let the police enter without a search warrant. She denied appellant was in the apartment and said she had not seen him for a year. Sergeant Barnett advised her that he would attempt to obtain a search warrant and withdrew to a sidewalk in the apartment complex leading to the front door.
Five to ten minutes later Sergeant Barnett saw Ms. Bowman, and a child he estimated at “seven to ten years old,” leave the apartment, enter a vehicle, and leave. At trial, the *444 transcript shows the following exchange during the cross-examination of Sergeant Barnett:
Q: Okay. You never talked to Mr. Williams—
A: I did not.
Q: —yourself?
A: No, sir.
Q: But you were present the whole time?[1] A: Yes.
Q: And after Ms. Bowman and her daughter left, there was no indication anybody else was in the apartment?
A: From some of the neighbors, yes, there was. We had several people come up—
Q: From your observations.
A: Not immediately, no, sir. [sic] Not until after some conversation with an individual on the phone did I see somebody inside the apartment.
Q: Which was him?
A: Yes.
Q: Mr. Williams?
A: Yes.
Q: That’s the only person you saw?
A: Yes, but at the time I didn’t know it was him.
A: I can’t say for sure there was no one else in the apartment, and the only thing I could see was a figure in the window. It was dark inside the apartment. I would assume it was him.
Within an hour, a woman approached Sergeant Barnett and advised she was Ms. Bowman’s sister. Barnett testified the woman told him that “Ms. Bowman had come to her residence scared ... and asked [her] to relate to us, the police, that Mr. *445 Williams was inside the apartment and he had a gun and that we had her permission to go inside.”[2]
Officer Patrick McFarland was standing “out in front of the apartment complex.” Almost contemporaneous to Sergeant Barnett’s conversation with Ms. Bowman’s sister, McFarland saw a woman “crying and talking on [a cell] phone.” This woman, Judy Pressey, approached McFarland, and advised him she was speaking with her brother Chris, the appellant, and permitted the officer to talk on the cell phone. Officer McFarland advised appellant he was a policeman, and appellant “interrupted me and said that the door was barricaded, and that he was armed ... [and] ... that he was going to come out shooting if we came in from the front door.” At this point, police called a SWAT team.
One member of the SWAT team was Officer Jerry White, a negotiator. He telephoned apartment 206-C and identified himself. The appellant repeatedly told Officer White that he was “heavily armed and the door is barricaded. If anybody comes through that he’s going to open fire.” He stated he had “a handgun.” After several hours of negotiation, Officer White persuaded appellant to surrender. He told appellant “to leave the handgun at the top of the steps which leads down to the front door.” Appellant, unarmed, exited the front door with his hands raised and was taken into custody. During the negotiation process, a number of neighbors and members of appellant’s family had arrived on the scene.
Immediately following the surrender, Sergeant Barnett and two other officers opened the front door and proceeded up the stairs. The purpose of the entry, as Sergeant Barnett testified, was for a “protective sweep and attempt to locate a handgun that we believed was inside.” A handgun was found *446 in plain view “on top of the banister at the top of the staircase.” The sergeant and the other officers searched the apartment “to see if there was anyone else in there,” “for the presence of other people.” The “sweep” did not involve a search into “cupboards” or “drawers” but only into areas in which a person could be found. When asked if he was not going in just to look for other people, but also for the gun, Sergeant Barnett replied, “Yes, that was secondary. The securing of the weapon.”
The weapon recovered from the top of the staircase, where appellant had been directed by the negotiator to place it, was identified as a loaded, functional semiautomatic nine-millimeter handgun. Barnett testified that the “sights, trigger, hammer, all seemed to be functional.” In response to the trial court’s question “Is it operational,” Barnett testified “as best as I can tell, yes, Your Honor. The slide goes forward, trigger works, the hammer ... the barrel’s intact.” The appellant was indicted for possession of a firearm after having been previously convicted of a violent felony, in violation of Code § 18.2-308.2. At trial, appellant argued a motion to strike on the basis that the Commonwealth failed to show the firearm seized was operational. The trial court denied that motion, and appellant appealed the issue to this Court.
A motion to suppress the handgun was filed on the grounds that the warrantless search and seizure of the same violated Code § 19.2-60[3] and the Constitutions of Virginia and the United States. After hearing evidence and relevant argument, the trial court denied the motion, finding, inter alia, that exigent circumstances permitted the police “to do a protective sweep to make sure there’s no one else in the apartment who has access to this weapon” and recover the loaded weapon when “the mother and young child ... will be coming back into the house.”[4]
*447 After finding the appellant guilty, and in accordance with the mandatory minimum provisions of Code § 18.2-308.2, the trial court sentenced appellant to five years in the penitentiary.
IV.
Our analysis begins with firm recognition of the constitutional principles that warrantless searches are presumptively unreasonable and “that the ‘physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.’ ” Welsh v. Wisconsin, 466 U.S. 740, 748, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984) (quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972)).
Nonetheless, “[t]he Fourth Amendment [of the United States Constitution] is not, of course, a guarantee against all searches and seizures, but only against unreasonable searches and seizures.” United States v. Sharpe, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985) (emphasis in original). See also Jones v. Commonwealth, 29 Va.App. 363, 368-69, 512 S.E.2d 165, 167 (1999). In determining reasonableness, the United States Supreme Court has held on numerous occasions, “there is ‘no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.’” Michigan v. Long, 463 U.S. 1032, 1046, 103 S.Ct. 3469, 3479, 77 L.Ed.2d 1201 (1983) (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)) (additional citation omitted). “Reasonableness [] is measured in objective terms by examining the totality of the circum *448 stances.” Ohio v. Robinette, 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996)
A.
ENTRY
In Illinois v. McArthur, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), the United States Supreme Court addressed warrantless searches:
We nonetheless have made it clear that there are exceptions to the warrant requirement. When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrant-less search or seizure reasonable.... Consequently, rather than employing a per se rule of unreasonableness, we balance the privacy-related and law enforcement-related concerns to determine if the entry was reasonable.
531 U.S. at 330-31, 121 S.Ct. at 949.
An exception to the warrant requirement for a search of premises is the “protective sweep.” In Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the United States Supreme Court defined this concept as follows:
A “protective sweep” is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding____ [T]he Fourth Amendment would permit the protective sweep undertaken here if the searching officer “possessed a reasonable belief based on ‘specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted’ the officer in believing,” Michigan v. Long, 463 U.S. 1032, 1049-1050, 103 S.Ct. 3469, 3480-3481, 77 L.Ed.2d 1201 (1983) (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, *449 20 L.Ed.2d 889 (1968)), that the area swept harbored an individual posing a danger to the officer or others.
494 U.S. at 327, 110 S.Ct. at 1094.
In Buie, the area swept included a basement, which officers searched after the defendant had been taken into custody inside his home. Here, the protective sweep took place immediately after the defendant had been placed into custody just outside the apartment’s front door. That distinction, however, does not in and of itself render a protective sweep unreasonable.
Other jurisdictions agree that a warrantless search into a defendant’s home may be reasonable even when the arrest occurs outside the dwelling. In United States v. Lawlor, 406 F.3d 37 (1st Cir.2005), the court held,
We think that an arrest that occurs just outside the home can pose an equally serious threat to arresting officers as one that occurs in the home. Therefore, we accept the position that a protective sweep may be conducted following an arrest that takes place just outside the home, if sufficient facts exist that would warrant a reasonably prudent officer to fear that the area in question could harbor an individual posing a threat to those at the scene.
406 F.3d at 41. See also United States v. Cavely, 318 F.3d 987, 995-96 (10th Cir.2003); United States v. Wilson, 306 F.3d 231, 238 (5th Cir.2002); United States v. Colbert, 76 F.3d 773, 776-77 (6th Cir.1996); United States v. Henry, 48 F.3d 1282, 1284 (D.C.Cir.1995); United States v. Hoyos, 892 F.2d 1387, 1397 (9th Cir.1989), overruled on other grounds by United States v. Ruiz, 257 F.3d 1030, 1031 (2001) (“Whether the arrest occurred inside or outside the residence does not affect the reasonableness of the officer’s conduct. A bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another.”); United States v. Steele, 788 F.Supp. 278, 281-82 (N.D.W.Va.1992); Nelson v. State, 271 Ga.App. 658, 610 S.E.2d 627 (2005); People v. Cartwright, 454 Mich. 550, 563 N.W.2d 208, 213 (1997).
*450 A protective sweep is reasonable if “reasonably articulable facts” exist to show that the area searched “could harbor an individual posing a threat to those on the scene.” Lawlor, 406 F.3d at 41. Protective sweeps are thus permissible based on less than probable cause. See Buie, 494 U.S. at 327, 110 S.Ct. at 1094-95 United States v. Beckham, 325 F.Supp.2d 678, 688 (E.D.Va.2004); People v. Celis, 33 Cal.4th 667, 16 Cal.Rptr.3d 85, 93 P.3d 1027, 1036 (2004) (“A protective sweep can be justified merely by a reasonable suspicion that the area to be swept harbors a dangerous person.” (emphasis in original)).
We acknowledge, as the dissent points out, that the standard for reviewing the existence of an “exigent circumstances” exception to the warrant requirement is one of probable cause, Minnesota v. Olson, 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990), while the standard for reviewing the protective sweep exception is one of “reasonable suspicion.” Buie, 494 U.S. at 327, 110 S.Ct. at 1094-95. That distinction, however, does not preclude from appellate review what courts have termed exigent circumstances or including such circumstances in evaluating the propriety of a protective sweep. Consequently, one author has concluded,
A “protective sweep” is really a constitutional hybrid. It is a Terry—Long protective weapons search of a dwelling.... A “protective sweep” could also be considered a form of search incident [to arrest].... Protective sweeps are thus premised on exigent circumstances.
1 John Wesley Hall, Jr., Search and Seizure § 19.24 (3d ed. 2000). For example, in Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Supreme Court cited Buie for the proposition that “a warrantless search be circumscribed by the exigencies which justify its initiation.” 496 U.S. at 139-40, 110 S.Ct. at 2309 (emphasis added).
In Verez v. Commonwealth, 230 Va. 405, 337 S.E.2d 749 (1985), the Virginia Supreme Court approved a warrantless entry based upon exigent circumstances. The Court deemed relevant, inter alia, the following circumstances:
*451 (1) the degree of urgency involved and the time required to get a warrant ... (3) the possibility of danger to others, including police officers left to guard the site ... (5) whether the offense is serious, or involves violence —
230 Va. at 410-11, 337 S.E.2d at 753.
Though dealing with probable cause, in Keeter v. Commonwealth, 222 Va. 134, 278 S.E.2d 841 (1981), the Virginia Supreme Court held,
[t]he officers are not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight. They must be judged by their reaction to circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made.
222 Va. at 141, 278 S.E.2d at 846.[5]
Likewise, “[t]he validity of an entry for a protective sweep without a warrant depends on the reasonableness of the response, as perceived by police.” Cartwright, 563 N.W.2d at 213 (emphasis in original). See also State v. Brannan, 222 Ga.App. 372, 474 S.E.2d 267, 270 (1996) (“Although we review police actions from the standpoint of a hypothetical ‘reasonable’ officer, we must measure those actions from the foresight of an officer acting in a quickly developing situation and not from the hindsight of which judges have benefit.”).
Here, the defendant told at least two police officers that he was “heavily armed” and intended to shoot any officer who entered the premises. He later informed Officer White “that he had a handgun.” Accordingly, the officers could conclude, by either a probable cause or reasonable suspicion standard, *452 that there was at least one loaded weapon in the area subject to the protective sweep. And, if one claims to be heavily armed, it is reasonable to believe multiple weapons are present. A loaded, accessible weapon, by definition, may cause “danger to the officers or others.” Buie, 494 U.S. at 327, 110 S.Ct. at 1095.
In Steele, the police, responding to a domestic disturbance call, escorted the defendant’s girlfriend to an apartment she shared with him. While there officers noticed “a young man” other than the defendant at the residence. As the officers were taking the girlfriend to another location, the defendant, standing in front of the apartment, fired a rifle into the air and retreated inside the apartment. He later emerged, unarmed, and was taken into custody. Affirming the denial of a motion to suppress, the court stated:
[T]he parties have subsequently focused their arguments on the existence of exigent circumstances justifying a warrant-less search. In particular, the focus rests on the protective sweep exception to the warrant requirement as most recently discussed in Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).
Defendant argues that any reasonable threat to the officers’ safety ended upon his arrest approximately ten feet outside his apartment. Defendant premises this argument upon the claim that the officers cannot point to articulable facts supporting the concern that a person remained inside the apartment and posed a continuing threat to their safety....
... Defendant eventually surrendered, exiting the residence without the weapon.
788 F.Supp. at 281-82. Several witnesses testified that “the young man” had left the apartment. The court continued: *453 Defendant was not able to discredit Deputy Martin’s testimony that he simply did not know whether the young man remained in the apartment.
******
The Court is absolutely convinced that the above justifies a reasonable inference that a danger may have existed in the interior of the apartment.... A loaded, functioning weapon was known to be present in the rear portion of the residence.

Id.

The dissent cites Colbert for the proposition that where a police officer does not “have any information at all,” a reasonable suspicion cannot arise that a residence may harbor “an individual posing a danger to the officer or others.” We agree. But in Colbert, there were no relevant facts, and thus no rational inference therefrom, to raise a reasonable suspicion.
By contrast, police officers here did have information indicating the presence of others inside the apartment. In response to defense counsel’s question “was [there] any indication anybody else was in the apartment,” Barnett replied, “From some of the neighbors, yes there was.” Sergeant Barnett further testified, “I can’t say for sure there was no one else in the apartment,” because he had seen an unidentifiable person standing near a second story window in the “dark” apartment. These factors certainly provided information for the officers there to be concerned that others might be in the apartment.
As noted above, Buie justified a warrantless entry not just because of potential danger to police but also potential danger to others. The crowd which had gathered, including neighbors, bystanders, and members of the defendant’s family, was subject to immediate danger if the weapon or weapons were accessible to any individual who might still be in the apartment or in the crowd that had gathered. Moreover, that crowd compounded the problem of denying access to the premises pending application for a search warrant.
*454 The facts in this case are undisputed. Accordingly, we are to decide de novo the “ultimate question” of whether or not the officers violated the Fourth Amendment. Slayton v. Commonwealth, 41 Va.App. 101, 105, 582 S.E.2d 448, 449-50 (2003) (citation omitted). That question is whether these facts, to a prudent officer on the scene, generated a “reason able suspicion” that the apartment may “harbor an individual posing a danger to the officer and others.” Buie, 494 U.S. at 327, 110 S.Ct. at 1095. We conclude the “reasonable suspicion” threshold was met given the presence of both exigent circumstances and at least one loaded weapon. The protective sweep here was a “quick and limited minimal intrusion,” as prescribed by Buie. Id. After “balancing] the privacy-related and law enforcement-related concerns,” we hold the protective sweep did not violate the Fourth Amendment. McArthur, 531 U.S. at 331, 121 S.Ct. at 950.
Finally, the dissent maintains that “the Commonwealth failed to articulate any facts that would have justified an objectively reasonable belief that an individual inside the home posed a danger to the arresting officers.” However, in oral argument en banc appellant conceded that the testimony of Sergeant Barnett was ambiguous, that is, susceptible to two factual interpretations. One interpretation, documented in the transcript and one specifically accepted by the trial court, was that the officer articulated a reasonable belief that an individual, with access to a weapon, may have remained in the apartment following appellant’s arrest.
In Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), the Supreme Court set forth the following standard for reviewing motions to suppress and one particularly applicable to the instant case.
We therefore hold that as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to *455 give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.
517 U.S. at 699, 116 S.Ct. at 1663.
That standard has been repeatedly applied by this Court. See Kyer v. Commonwealth, 45 Va.App. 473, 479, 612 S.E.2d 213, 216-17 (2005) (en banc); Slayton, 41 Va.App. at 105, 582 S.E.2d at 449; McGee v. Commonwealth, 25 Va.App. 193, 197-98, 487 S.E.2d 259, 261 (1997).
The trial court specifically found that circumstances permitted the police “to do a protective sweep to make sure there’s no one else in the apartment who has access to this weapon.” As the Ornelas Court concluded its opinion: “An appeals court should give due weight to a trial court’s finding that the officer was credible and the inference was reasonable.” 517 U.S. at 700, 116 S.Ct. at 1663. We do so here.
B.
PLAIN VIEW
In Harris v. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991), the Virginia Supreme Court reiterated the requirements of the “plain view doctrine”:
“It is ... an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view, its incriminating character must also be ‘immediately apparent.’ Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.”
241 Va. at 153, 400 S.E.2d at 195 (quoting Horton, 496 U.S. at 136-37, 110 S.Ct. at 2308 (additional citations omitted)). “The phrase ‘immediately apparent’ has been construed as requiring that the investigating officer possess probable cause to *456 seize the item without further investigation.” Taylor v. Commonwealth, 10 Va.App. 260, 266, 391 S.E.2d 592, 595 (1990).
In Crosby v. Commonwealth, 6 Va.App. 193, 367 S.E.2d 730 (1988), this Court upheld the seizure of a weapon, a sawed-off shotgun, found in plain view by officers while securing the defendant’s apartment. There, the Court held that officers were justified in securing the premises, described as a “limited security cheek” akin to the protective sweep conducted in this matter. “Because [the] Detective [ ] was lawfully securing the premises, the evidence in plain view, i.e., the sawed-off shotgun, was subject to seizure under the plain view exception to the warrant requirement.” 6 Va.App. at 202, 367 S.E.2d at 736.
Here, we held that the police officers did not violate the Fourth Amendment by conducting a protective sweep of the apartment. Because of the appellant’s threats to police and repeated claims of being “heavily armed,” officers had probable cause to believe that the gun, in plain view at the top of the stairs, was connected to appellant’s criminal activity. See Cantrell v. Commonwealth, 7 Va.App. 269, 285, 373 S.E.2d 328, 336 (1988) (“The police [ ] had probable cause to associate these items with criminal activity.”). Therefore, it was permissible for officers to seize the gun as a part of their protective sweep of the apartment. Accordingly, the trial court properly denied appellant’s motion to suppress.
V.
Additionally, appellant argued during his motion to strike that Code § 18.2-308.2 requires the Commonwealth to prove the seized firearm was operable and that the Commonwealth failed to do so. However, in Kingsbur v. Commonwealth, 267 Va. 348, 351, 593 S.E.2d 208, 210 (2004), the Virginia Supreme Court defined the burden of the Commonwealth under this statute. “The Commonwealth was required to prove beyond a reasonable doubt that the handgun ... was designed, made, and intended to fire or expel a projectile by means of an explosion. It was not obligated to prove that the *457 handgun was operable.” Id. See also Armstrong v. Commonwealth, 263 Va. 573, 583-84, 562 S.E.2d 139, 145 (2002) (“And we are further of opinion that to read into Code § 18.2-308.2 by implication a requirement that the meaning of the term ‘firearm’ includes an element of present capacity or operability would amount to an unreasonably restrictive interpretation of that term and subvert the intent of the General Assembly.”). On brief, “appellant acknowledges that the Virginia Supreme Court rejected [his] interpretation [of Code § 18.2-308.2] in Armstrong ____” Accordingly, appellant’s argument that the Commonwealth must prove operability under Code § 18.2-308.2 lacks merit, and we hold the trial court properly denied his motion to strike.
VI.
For the foregoing reasons, we affirm the trial court’s denial of appellant’s motion to suppress and find the evidence sufficient to sustain the conviction.

Affirmed.

. Sergeant Barnett led the subsequent "protective sweep.”

. Defendant interposed a hearsay objection to this testimony. The trial court, nonetheless, accepted the testimony upon the representation by the Commonwealth that it was "not being offered for the truth of the matter but just for what the officers do next and how things progressed.” The question of an entry by the consent of Ms. Bowman, the actual tenant, was not presented to the trial court or to this Court. Accordingly, we will not address it.

. Code § 19.2-60 provides, “A person aggrieved by an allegedly unlawful search or seizure may move the court to return any seized property and to suppress it for use as evidence.”

. In addition to a "protective sweep,” the trial court also found the search permissible under the "community caretaker” exception to the *447 warrant requirement. We do not address this finding. See Armstrong v. Nationwide Mut. Ins. Co., 215 Va. 333, 333, 209 S.E.2d 903, 903 (1974) ("The chancellor, in his opinion letter, set forth alternate grounds for his holding. We must affirm this ruling if the chancellor was correct on either ground. We need consider only the chancellor's first ground____”).

. This Court has also expressed a reluctance to second-guess the judgment of police officers in the context of a Fourth Amendment search and seizure. See Alston v. Commonwealth, 40 Va.App. 728, 743, 581 S.E.2d 245, 252 (2003) ("Even though this case did not involve a situation that was overtly dangerous ... ‘our reluctance to second-guess the judgment of experienced officers is not limited to such extreme situations.' ” (quoting United States v. White, 648 F.2d 29, 36 (1981))).