COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judge Humphreys and Senior Judge Bumgardner
Argued at Salem, Virginia

UNPUBLISHED

BILLY RAY WILSON

MEMORANDUM OPINION[*] BY
v.        Record No. 1853-14-3              CHIEF JUDGE GLEN A. HUFF
NOVEMBER 3, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

M. Kevin Bailey (Andrew W. Childress; Pafford Lawrence &
Childress, PLLC, on brief), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Billy Ray Wilson ("appellant") appeals his convictions for driving as a habitual offender,

in violation of Code § 46.2-357, and driving while intoxicated ("DUI"), in violation of Code

§ 18.2-266.  Following a jury trial in the Campbell County Circuit Court ("trial court"), appellant

was sentenced to 12 months' incarceration and fined $2,500 for the DUI conviction, and to five

years' incarceration for the habitual offender conviction.  Appellant presents two assignments of

error on appeal:

> 1.  The trial court erred in finding the evidence sufficiently proved
> [appellant] was operating a vehicle as required by . . . Code
> § 46.2-357, or by . . . Code § 18.2-266 because no witness saw him
> operating the SUV, and the driver of the car left the scene of the
> accident.
>
> 2.  The trial court erred in admitting a statement of [appellant]
> which was obtained in violation of [appellant's] right to remain

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

silent and right to counsel pursuant to the Fifth and Sixth Amendments of the United States Constitution.

For the following reasons, this Court affirms appellant's convictions.

## I. BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).  So viewed, the evidence is as follows.

Around 10:00 p.m. on November 16, 2012, Brian Harris ("Harris"), an EMT with the Lyn-Dan Heights Fire Department, along with EMTs Eric Spencer ("Spencer") and Roy Sage ("Sage") of the Rustburg Volunteer Fire Department, arrived at the scene of a vehicle accident on Depot Road in Campbell County.  Upon arriving at the accident scene, they observed an overturned Toyota 4 Runner SUV, and an unidentified woman informed Harris that a person was still inside the vehicle.  Further investigation revealed that appellant was the sole occupant of the SUV, and he was on the driver's side "hanging upside down . . . with his leg wrapped around the steering column." Sage entered the SUV and freed appellant's leg, which allowed appellant to exit the vehicle through one of the windows.

Appellant's speech was slurred, and he was emanating an odor of alcohol.  Initially, he did not tell the rescue personnel his correct name.  Additionally, he asked Sage if he could "tell them [Sage] was driving."  Shortly thereafter, however, appellant told Spencer that "there was a female driver that must have fled the scene."  Neither Spencer nor Harris saw any personal belongings that suggested anyone other than appellant had been in the SUV.

Virginia State Trooper Todd Bullington ("Bullington") was dispatched to the accident scene around 10:30 p.m.  When he arrived, appellant was lying on a backboard in an ambulance.

Bullington testified that appellant's speech was slurred and that his eyes were glassy and bloodshot. In response to Bullington's questions, appellant stated that the vehicle was his and that he had purchased it earlier that day. Appellant also stated that "some girl" had been the driver, but he was not able to provide her name. When Bullington asked for appellant to take a preliminary breath test, appellant said that he did not want to talk anymore, and Bullington did not question him further at that time.

Bullington also spoke with Brandon Carter ("Carter") at the accident site. Carter testified that while he is not related to appellant, he nevertheless called him "dad" because "he's kind of raised me." Carter knew that appellant was a habitual offender and was "not supposed to drive." At the scene of the accident, Carter told Bullington that he had not seen appellant driving that night because he was not at home when appellant left in the SUV that evening. Additionally, Carter did not mention to Bullington that there could have been another person driving the SUV that night.

After appellant was taken to a hospital, Bullington visited appellant to ask "a few follow-up questions" about the accident. Appellant stated that he had not been driving the SUV and became angry when Bullington asked who, then, had been driving, telling Bullington, "that's your fucking job, figure it out." Bullington then placed appellant under arrest and advised him of his Miranda rights. Bullington then began reading the implied consent form to appellant. As Bullington was reading the form, appellant "was talking the whole time about how he didn't want to talk to [Bullington]," causing Bullington to stop and tell him, "I'm not asking you questions . . . I just . . . have to read this to you." Bullington testified at a pre-trial motion that "at some point" while he was reading the form, appellant said, "I flipped the Jeep and you're harassing me." Then again, at appellant's trial, Bullington testified that appellant "blurted out something to the effect of, you're harassing me because I flipped my Jeep." Bullington testified on cross-examination, however, that he could not recall the exact words used by appellant.

At a pre-trial motion on November 25, 2013, appellant moved to suppress the statement he made to Bullington while in the hospital that he had "flipped the Jeep." Appellant argued that the statement was obtained in violation of his "Fifth and Sixth and Fourteenth Amendment" rights. The trial court denied the motion, finding that the statement was made voluntarily.

At appellant's trial, on December 2, 2013, appellant presented two witnesses that testified that a woman was driving the SUV on the night in question. First, Carter testified that he and appellant had purchased the SUV from a man in Appomattox via Craigslist with the intention of reselling it for a profit. Carter stated that they drove the vehicle back to Carter's house, where some friends had been invited over and they "started a fire and [were] out there drinking." Carter testified that appellant invited a woman named "Marie" to the party and that she arrived in a white, Ford minivan. Carter previously did not know Marie, and described her as "short, chunky, [with] black hair [and] glasses." Carter testified that Marie wanted to test drive the SUV, so she and appellant went to get more beer with Marie driving. Twenty to twenty-five minutes after they left, Carter said that he heard sirens going past his house so he "went up Depot" until he saw the overturned SUV. Carter testified that he did not see Marie again and that her van was not at his house the following morning.

Dolly Bryant ("Bryant") also testified that she had been at Carter's house that evening and that appellant introduced her to a girl named "Maria." Bryant testified that Maria "had an accent," was "medium size," and did not wear glasses. Additionally, Bryant testified that Maria's hair was blonde to brown. Bryant testified that Maria was driving when she and appellant left the house in the SUV.

At the close of the evidence, appellant moved to strike both the DUI and habitual offender charges. The trial court denied the motions, and, after closing arguments, the jury found appellant guilty of both charges. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

On appeal, appellant first contends that the trial court erred by denying his motions to strike the Commonwealth's evidence. Specifically, he argues that the evidence was insufficient to prove that he was driving the SUV.

Our standard for reviewing the sufficiency of the evidence is firmly established:

> [W]hen the sufficiency of the evidence is challenged on appeal, the evidence and all reasonable inferences fairly drawn therefrom must be viewed in the light most favorable to the Commonwealth. The trial court's judgment should be affirmed unless it appears that it is plainly wrong or without evidence to support it.

Spencer v. Commonwealth, 238 Va. 275, 283, 384 S.E.2d 775, 779 (1989) (citations omitted). Additionally, under this familiar standard of review, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id.

"Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993). Therefore, this Court will not disturb the fact finder's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible." Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999). Indeed, "[t]he living record contains many guideposts to the truth which are not in the printed record," and an appellate court, not having the benefit of these

guideposts, "should give great weight to the conclusions of those who have seen and heard them." Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955).

Appellant is correct in noting that both of the offenses for which he was convicted – driving while intoxicated, in violation of Code § 18.2-266, and driving after being declared a habitual offender, in violation of Code § 46.2-357 – required the Commonwealth to prove beyond a reasonable doubt that appellant was the driver of the SUV. In the present case, the evidence was sufficient to establish this fact. Specifically, when the EMTs arrived on the scene, appellant was the only person found in the overturned SUV, and he was trapped with his leg wrapped around the steering column so that his body was hanging on the driver's side. See Keesee v. Commonwealth, 32 Va. App. 263, 527 S.E.2d 473 (2000) (holding that evidence was sufficient to prove the defendant had been operating the motor vehicle where defendant was the only person in the car when police arrived at the scene of the accident and defendant was trapped in the vehicle with his legs pinned under the steering wheel and dashboard).

Additionally, appellant made multiple statements that support his conviction. First, while being questioned by Bullington in the hospital, appellant angrily "blurted out" that Bullington was harassing him because he "flipped [his] Jeep,"[1] implicitly admitting that he was the driver. Moreover, appellant initially lied to the EMTs by giving them a false name. As, "[a] defendant's false statements are probative to show he is trying to conceal his guilt, and thus are evidence of

---

[1] Appellant's second assignment of error alleges that this statement was admitted in violation of his Fifth and Sixth Amendment rights. When an appeal challenges both the sufficiency of the evidence as well as the admissibility of certain evidence upon which the conviction was based, Code § 19.2-324.1 requires this Court to consider "all the evidence admitted at trial to determine whether there is sufficient evidence to sustain the conviction," including the evidence challenged on appeal. If this Court subsequently determines that the challenged evidence was erroneously admitted and not harmless, the remedy is that "the case shall be remanded for a new trial if the Commonwealth elects to have a new trial." Code § 19.2-324.1.

- 6 -

his guilt," Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991), this lie is further evidence that supports the determination that appellant was driving the SUV.

Accordingly, this Court holds that, from the above circumstances and statements, a rational trier of fact could have found that appellant was driving the SUV.

## B. Motion to Suppress Statement

Next, appellant contends that the trial court erred in admitting his statement into evidence that he "flipped [his] Jeep." Specifically, he argues that the statement was obtained in violation of his rights under the Fifth and Sixth Amendments of the United States Constitution.

The Sixth Amendment right to counsel is "offense specific," meaning that it does not come into being until a criminal prosecution has begun, and it is limited by the extent of that action. McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). As such, the invocation of this right "does not bar police initiated interrogation with respect to charges unrelated to those for which counsel has been employed." Jackson v. Commonwealth, 14 Va. App. 414, 416, 417 S.E.2d 5, 7 (1992). The Fifth Amendment right to counsel, on the other hand, provides a right to the assistance of counsel at any "custodial interrogation" when it is invoked. Michigan v. Jackson, 475 U.S. 625, 629 (1985).

Appellant first argues that his statement in the hospital that he "flipped [his] Jeep" was admitted in violation of the Fifth Amendment. The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Thus, "[w]hen police *interrogate* a suspect in their *custody*, they must first give a Miranda warning informing the suspect of the right to an attorney and the right to have that attorney present during interrogation." Commonwealth v. Quarles, 283 Va. 214, 220, 720 S.E.2d 84, 87 (2012) (emphasis added) (citing Miranda v. Arizona, 384 U.S. 436, 469-73 (1966)). Statements made by a suspect who is *both* in police custody and under police interrogation generally will be

suppressed if the suspect has not been first advised of his <u>Miranda</u> rights.  <u>See, e.g.</u>, <u>Testa v. Commonwealth</u>, 55 Va. App. 275, 283 n.5, 685 S.E.2d 213, 217 n.5 (2009).

Once a suspect invokes these rights, "further discussions between the police and the accused must [be] initiated by the accused."  <u>Correll v. Commonwealth</u>, 232 Va. 454, 462, 352 S.E.2d 352, 356 (1987).  Notwithstanding, a suspect cannot "invoke his <u>Miranda</u> rights anticipatorily, in a context other than custodial interrogation."  <u>McNeil</u>, 501 U.S. at 182 n.3.  Determining whether a person is in "'custody depends on the objective circumstances of the interrogation, not only the subjective views harbored by either the interrogating officers or the person being questioned.'"  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663 (2004) (quoting <u>Stansbury v. California</u>, 511 U.S. 318, 323 (1994)).  In making this determination, "[c]ourts must examine 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'"  <u>Id.</u> (quoting <u>Stansbury</u>, 511 U.S. at 325).  In <u>Thompson v. Keohane</u>, 516 U.S. 99, 112 (1995), the United States Supreme Court offered the following description of the <u>Miranda</u> test:

> Two discrete inquiries are essential to the determination:  first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.  Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry:  was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

Turning to the present case, appellant was lying in an ambulance when Bullington initially questioned him for two to three minutes regarding the accident.  After Bullington asked if appellant would take a preliminary breath test, appellant refused and stated that he did not want to talk anymore.  At this point, Bullington respected appellant's request to terminate the

conversation. Notably, appellant had not yet been formally placed under arrest nor physically detained in any way. Ramos v. Commonwealth, 30 Va. App. 365, 369, 516 S.E.2d 737, 740 (1999) (even "the mere presence of some physical restraint does not change a stop into a custodial arrest"). As such, the circumstances of this case indicate that appellant was not in custody at this time. See Harris v. Commonwealth, 27 Va. App. 554, 564, 566, 500 S.E.2d 257, 262, 262 (1998) (custodial status is determined on a case-by-case basis, with no single factor being dispositive).

Consequently, appellant's termination of the conversation did not constitute an invocation of appellant's Fifth Amendment right to counsel because a suspect cannot "invoke his Miranda rights anticipatorily, in a context other than custodial interrogation." McNeil, 501 U.S. at 182 n.3. Accordingly, it was permissible for Bullington to reinitiate the conversation with appellant after he was taken to the hospital.

During this conversation in the hospital, appellant became belligerent, which eventually led to Bullington placing appellant under arrest and advising him of his Miranda rights. After reading him his Miranda rights, Bullington began reading the "lengthy" implied consent law to appellant, as he was required to do by Code § 18.2-268.3(B).[2] While Bullington was attempting

---

[2] Code § 18.2-268.3(B) provides that

> [w]hen a person is arrested for a violation of § 18.2-51.4,
> 18.2-266, 18.2-266.1 or, subsection B of § 18.2-272 or of a similar
> ordinance and such person refuses to permit blood or breath or
> both blood and breath samples to be taken for testing as required
> by § 18.2-268.2, the arresting officer *shall advise the person, from
> a form provided by the Office of the Executive Secretary of the
> Supreme Court, that* (i) a person who operates a motor vehicle
> upon a highway in the Commonwealth is deemed thereby, as a
> condition of such operation, to have consented to have samples of
> his blood and breath taken for chemical tests to determine the
> alcohol or drug content of his blood, [and] (ii) a finding of

to read the implied consent form, appellant "was talking the whole time about how he didn't want to talk to [Bullington]," causing Bullington to stop and tell him, "I'm not asking you questions . . . I just . . . have to read this to you."  Nevertheless, while Bullington was reading the implied consent form, appellant "blurted out something to the effect of, you're harassing me because I flipped my Jeep."

"Even when otherwise applicable, Miranda bars from evidence only a suspect's responses to police *interrogation* and has no impact on a suspect's volunteered statements."  Testa, 55 Va. App. at 283, 685 S.E.2d at 217.  Indeed, "[v]olunteered statements of any kind are not barred by the Fifth Amendment," Miranda explained, "and their admissibility is not affected by our holding today."  Miranda, 384 U.S. at 478.  Moreover, even "'a statement following a police officer's question may qualify as at least equivalent of being volunteered when it is unresponsive.'"  Testa, 55 Va. App. at 284, 685 S.E.2d at 217 (quoting 2 Wayne R. LaFave Criminal Procedure § 6.7(d), at 792 (3d ed. 2007)).  In this respect, if a suspect's statement is "not foreseeable, then it is volunteered."  Watts v. Commonwealth, 38 Va. App. 206, 217, 562 S.E.2d 699, 705 (2002) (citations omitted).

In the present case, even though appellant was placed under arrest and, therefore, in custody, his statement that he "flipped [his] Jeep" was not in response to police interrogation. Bullington was reading the informed consent form, as he was required by law to do, when appellant "blurted out" the statement.  As such, the statement was voluntary as it was not responsive to any question propounded by Bullington, and its admissibility was not barred by the Fifth Amendment.

---

unreasonable refusal to consent may be admitted as evidence at a criminal trial . . . .

(Emphasis added).

Next, appellant contends that the statement was admitted into evidence in violation of his Sixth Amendment right to counsel. "[T]he right to counsel granted by the Sixth . . . Amendment[] means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him – 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Brewer v. Williams, 430 U.S. 387, 398 (1977) (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1971)). Indeed, "'the 'core purpose' of the [Sixth Amendment right to] counsel guarantee is to assure aid at trial, when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor.'" Hunter v. Commonwealth, 3 Va. App. 221, 224, 349 S.E.2d 154, 156 (1986) (quoting United States v. Gouveia, 467 U.S. 180, 188-89 (1984)). Notwithstanding, the United States Supreme Court has "'extended'" the Sixth Amendment right to counsel "'to certain critical pre-trial proceedings,'" but this has been done "'recognizing that at [these critical] proceedings, the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.'" Id.

In the present case, appellant had been arrested, but adversarial judicial proceedings had not begun. Indeed, the conversation between appellant and Bullington took place at a time when appellant had not been charged and was not being confronted by the procedural intricacies or expert adversaries of the judicial process. Consequently, admission of the statement did not violate appellant's rights under the Sixth Amendment.

### III. CONCLUSION

For the foregoing reasons, this Court finds that the evidence was sufficient to establish that appellant was the driver of the SUV and that the trial court did not err by admitting appellant's statement that he "flipped [his] Jeep."

Affirmed.