COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Petty and Senior Judge Clements
Argued at Alexandria, Virginia

JOSHUA MARK TESTA

                                                     OPINION BY
v.        Record No. 2438-08-4         JUDGE D. ARTHUR KELSEY
                                                     DECEMBER 1, 2009
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
J. Howe Brown, Jr., Judge Designate

J. Daniel Griffith, Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


The trial court convicted Joshua Mark Testa of misdemeanor obstruction of justice for

threatening two deputies with violence if they attempted to arrest him.  Testa argues on appeal

that the trial court should have suppressed the evidence of his threats.  Testa also contends his

conviction rests on insufficient evidence.  Finding the exclusionary rule inapplicable and the

evidence sufficient, we affirm Testa's conviction.

I.

We review the facts "in the light most favorable to the Commonwealth, giving it the

benefit of any reasonable inferences."  Glenn v. Commonwealth, 49 Va. App. 413, 416, 642

S.E.2d 282, 283 (2007) (en banc) (citation omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008).

This standard requires us to "give due weight to inferences drawn from those facts by resident

judges and local law enforcement officers."  Malbrough v. Commonwealth, 275 Va. 163, 169,

655 S.E.2d 1, 3 (2008) (citation omitted).

When affirming a trial court's denial of a suppression motion, we consider facts

presented both at the suppression hearing and at trial.  See Emerson v. Commonwealth, 43

Va. App. 263, 272, 597 S.E.2d 242, 247 (2004); DePriest v. Commonwealth, 4 Va. App. 577,

583, 359 S.E.2d 540, 542-43 (1987); accord United States v. Han, 74 F.3d 537, 539 (4th Cir. 1996).

The evidence showed that Testa lived with his stepfather, Kevin Griffin. Two deputy sheriffs arrived at Griffin's home to investigate a complaint of domestic violence involving Testa and his girlfriend. Outside the home, the deputies were met by the girlfriend's father. He advised them that Testa was armed and dangerous.[1] Prior to entering the home, the deputies also had been warned that Testa had recently assaulted other deputies, one of them severely. Griffin met the deputies at the door and invited them to come inside. When Griffin discovered that Testa had locked himself in his bedroom, Griffin offered the deputies the use of a wire coat hanger to unlock the door from the outside. The deputies declined Griffin's suggestion and attempted to speak with Testa through the closed bedroom door.

One of the deputies said to Testa, "I'm not here to arrest you. I just need to get your side of the story. This is what we do in a domestic situation. I want to hear your side of the story. Can you please come out?" Testa replied, "Go fuck yourself" or something to that effect. Shortly thereafter, less than a minute after the deputies first spoke to him, Testa said through the closed bedroom door: "I'm going to pick you motherfuckers off one by one." He continued making such threats for about ten minutes. "[I]f I'm going back to jail, I'm bringing you down with me," Testa warned. The deputies understood Testa to be "threatening [their] lives." Testa

---

[1] Testa objected to this testimony as hearsay and argues on appeal the trial court erroneously failed to sustain his objection. The hearsay rule, however, "excludes out-of-court declarations only when they are 'offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.*' If the court can determine, from the context and from the other evidence in the case that the evidence is offered for a different purpose, the hearsay rule is no barrier to its admission." Winston v. Commonwealth, 268 Va. 564, 591, 604 S.E.2d 21, 36 (2004) (emphasis in original and citation omitted). It necessarily follows that "[t]he hearsay rule does not operate to exclude evidence of a statement offered for the mere purpose of explaining the conduct of the person to whom it was made." Id. (citation omitted). Because the record reveals that the prosecutor offered this testimony "not for the truth of the matter" but only to explain the deputies' reaction to this information, the trial court did not err in admitting it.

also made threatening statements concerning the complaining witness and her family. The deputies remained outside the door with weapons drawn and attempted to diffuse the situation. They did not forcibly enter the bedroom or order him to remain in it. Nor did they search the bedroom or any other area of the home.

Settling down after his tirade, Testa decided to talk to the deputies. After giving Testa an opportunity to give his side of the story in reply to the domestic violence complaint, the deputies arrested him for obstructing justice. At no time prior to Testa's arrest did Testa ask the deputies to leave his stepfather's home or assert any putative right to countermand his stepfather's invitation to the police to enter the home. Nor did Testa ever request assistance of counsel or insist upon any right to remain silent.

Prior to trial, Testa moved to suppress his threatening statements to the deputies on the ground that they had no constitutional right to be present in the hallway of his stepfather's home after Testa told them, "Go fuck yourself." Testa also claimed that the deputies violated his right against self-incrimination by failing to advise him of his Miranda rights prior to his threatening statements. The trial court denied the motion, proceeded to trial, and found Testa guilty of obstruction of justice under Code § 18.2-460(B).

II.

On appeal, Testa renews the arguments he made in support of his unsuccessful motion to suppress. He also challenges the sufficiency of the evidence supporting his misdemeanor conviction for obstruction of justice. We find no merit in either assertion.

A. MOTION TO SUPPRESS — GEORGIA V. RANDOLPH

Testa's suppression argument devolves into a simple syllogism: Had the deputies left his stepfather's home when Testa said, "Go fuck yourself," they would not have been there to hear his later threats — consequently, it was the deputies' fault (constitutionally speaking) that Testa

made those threats while the deputies were within earshot of him. Testa erects this argument upon Georgia v. Randolph, 547 U.S. 103 (2006), which held that police may not conduct a consent search of a home when one co-owner grants permission while another co-owner expressly refuses it. We do not believe Randolph can sustain the weight of Testa's argument.

Randolph involved the application of the exclusionary rule to "a warrantless *search* of a shared dwelling" for evidence of a crime. Id. at 120 (emphasis added); see also id. at 119 (noting that the majority was "recognizing limits on merely evidentiary searches"); id. at 122 (limiting issue to situation involving an "express refusal of consent to a police search"). Here, the deputies did not search Griffin's home. They simply entered it with the owner's permission, walked into the common hallway at the owner's invitation, and remained there throughout with the owner's approval.[2] Testa was not a co-owner, renter, or boarding house tenant.[3] He simply occupied a bedroom in his stepfather's home. Nothing in Randolph suggests that a live-in guest of a homeowner can veto the owner's right to invite anyone he may choose (whether police officers or anyone else) to accompany him into the common areas of his own home. See id. at 114 (explaining that Fourth Amendment privacy analysis takes into account any "recognized hierarchy" between the consenter and objector).[4]

---

[2] Because of our holding, we need not decide whether Testa's guttural outburst ("Go fuck yourself") can be analogized to the statements of the co-owner in Randolph who "unequivocally refused" when the officers asked for consent to search his home. Id. at 107.

[3] If he had any such status, it was his burden to prove it. Under settled principles, the "defendant alone bears the 'burden of proving' factual circumstances giving rise to a reasonable expectation of privacy." Logan v. Commonwealth, 47 Va. App. 168, 171 n.2, 622 S.E.2d 771, 773 n.2 (2005) (*en banc*) (citation omitted). "This is not a mere burden of production, requiring only a going forward with the evidence; it is a 'burden of persuasion,' requiring the defendant to prove to the satisfaction of the factfinder the existence of those facts upon which a legal conclusion can be drawn." Id. (citation omitted).

[4] The deputies did not ask Testa for permission either to enter the home or to remain in it. Nor did they have any constitutional duty to do so. "[W]e think it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially

Equally important, the evidence suppressed in <u>Randolph</u> involved evidence of a *past* crime found during an unlawful search. In contrast, Testa seeks to suppress evidence of a *new* crime committed during an allegedly unlawful entry. This assertion takes the exclusionary rule well beyond <u>Randolph</u> and further still beyond traditional boundaries. As we recently explained, "the overwhelming weight of authority on this issue" makes clear that "if a person engages in new and distinct criminal acts" during an allegedly unlawful police encounter, "the exclusionary rule does not apply, and evidence of the events constituting the new criminal activity, including testimony describing the defendant's own actions, is admissible." <u>Brown v. City of Danville</u>, 44 Va. App. 586, 600, 606 S.E.2d 523, 530 (2004); <u>see</u> <u>also</u> <u>United States v. Sprinkle</u>, 106 F.3d 613, 619 (4th Cir. 1997) (holding exclusionary rule inapplicable to "a new, distinct crime" occurring during an allegedly unlawful detention (citation omitted)).

## B. MOTION TO SUPPRESS — MIRANDA WARNINGS

Testa also argues that, prior to making his threats against the deputies, they should have advised him of his right to remain silent under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). We again disagree.

Even when otherwise applicable,[5] <u>Miranda</u> bars from evidence only a suspect's responses to police *interrogation* and has no impact on a suspect's volunteered statements. "Volunteered statements of any kind are not barred by the Fifth Amendment," <u>Miranda</u> explained, "and their

---

objecting co-tenant before acting on the permission they had already received." <u>Randolph</u>, 547 U.S. at 122.

[5] <u>Miranda</u> requires warnings to be given to a suspect only when there is a "formal arrest or restraint on the freedom of movement of the degree associated with a formal arrest." <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663 (2004) (citation omitted). <u>Miranda</u> does not apply to a temporary investigatory detention that does not escalate into a *de facto* arrest. <u>Ramos v. Commonwealth</u>, 30 Va. App. 365, 516 S.E.2d 737 (1999). The Commonwealth argues that at the time of Testa's threats against them, the deputies never detained Testa at all, much less to the degree associated with a formal arrest. Given our holding, we need not address this issue.

admissibility is not affected by our holding today." Id. at 478. "Indeed, a statement following a police officer's question may qualify as at least the equivalent of being volunteered when it is unresponsive." 2 Wayne R. LaFave, Criminal Procedure § 6.7(d), at 792 (3d ed. 2007). In this respect, if a suspect's statement is "not foreseeable, then it is volunteered." Watts v. Commonwealth, 38 Va. App. 206, 217, 562 S.E.2d 699, 705 (2002) (quoting Gates v. Commonwealth, 30 Va. App. 352, 356, 516 S.E.2d 731, 733 (1999), in turn quoting Blain v. Commonwealth, 7 Va. App. 10, 15, 371 S.E.2d 838, 841 (1988)).

When a "suspect responds to questioning with statements which themselves are criminal," Miranda does not bar their admission into evidence. 3 LaFave, *supra* § 9.5(e), at 484. Verbal crimes are intrinsically unforeseeable and volunteered. As one court has explained:

> Committing a crime is far different from making an inculpatory statement, and the treatment we afford the two events differs accordingly. An inculpatory statement usually relates to a previously committed illegal act; there is nothing unlawful about the statement itself. A crime, on the other hand, whether committed by word or deed is by definition an act that violates the law. We exclude inculpatory evidence when it is obtained as a result of an unlawful search or seizure. We have never, however, applied the exclusionary rule as a bar to the prosecution of a crime.

United States v. Garcia-Jordan, 860 F.2d 156, 160 (5th Cir. 1998) (citation omitted). "Consistent with the approach taken with respect to the Fourth Amendment exclusionary rule, the courts have answered that the Miranda exclusionary rule need not be pushed so far that such crimes-by-words cannot be proved and punished." 3 LaFave, *supra* at 484. Given our agreement with this principle in the Fourth Amendment context, see Brown, 44 Va. App. at 599-600, 606 S.E.2d at 530-31, and our view that verbal crimes constitute unforeseeable, volunteered statements when made in the context of an interrogation, we hold that Miranda did not require the suppression of Testa's verbal threats to the deputies.

C.  SUFFICIENCY OF THE EVIDENCE — OBSTRUCTION OF JUSTICE

The trial court found Testa guilty of misdemeanor obstruction of justice under Code § 18.2-460(B), which prohibits a person from "using threats or force to knowingly attempt to intimidate or impede a law-enforcement officer lawfully engaged in the performance of his duties." Washington v. Commonwealth, 273 Va. 619, 624, 643 S.E.2d 485, 488 (2007). The obstruction of justice statute does not "require the defendant to commit an actual or technical assault upon the officer." Craddock v. Commonwealth, 40 Va. App. 539, 552-53, 580 S.E.2d 454, 461 (2003). Under the plain wording of Code § 18.2-460(B), the crime involves merely an *attempt* to intimidate or impede the officer with either threats or force. See Wise v. Commonwealth, 49 Va. App. 344, 356, 641 S.E.2d 134, 140 (2007) (observing that "it is immaterial whether the officer is placed in fear or apprehension" because the "offense is complete when the attempt to intimidate is made" (citation omitted)).

Ample evidence in this case proved Testa attempted to intimidate the deputies by threatening them with violence. Behind a closed, locked door, Testa told the deputies he would "pick" them "off one by one" if they tried to arrest him. He added, "[I]f I'm going back to jail. I'm bringing you down with me." He continued making these threats for about ten minutes. In context, the deputies understood all too well the situation facing them: A domestic violence suspect, barricaded behind a closed door, was threatening to kill them. For all the deputies knew, Testa could have burst through the door and opened fire at any moment during the tirade. Sufficient evidence, therefore, supports Testa's conviction for obstruction of justice.

III.

Finding no legal error in the trial court's denial of Testa's suppression motion or factual insufficiency supporting Testa's conviction, we affirm.

Affirmed.