COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Senior Judge Annunziata


NORMA SAENZ-ROMERO

                                                          MEMORANDUM OPINION[*]
v.        Record No. 1110-11-4                                 PER CURIAM
                                                              MARCH 6, 2012
ARLINGTON COUNTY DEPARTMENT OF HUMAN SERVICES


                    FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                              James F. Almand, Judge

                 (Deborah E. Kramer, on brief), for appellant.  Appellant submitting
                 on brief.

                 (Jonnise M. Conanan, Assistant County Attorney; Mina J. Ketchie,
                 Guardian *ad litem* for the minor child, on brief), for appellee.
                 Appellee and Guardian *ad litem* submitting on brief.


        Norma Saenz-Romero (mother) appeals an order terminating her parental rights to her oldest

child.[1]  Mother argues that the trial court abused its discretion and committed reversible error when

(1) it violated the Confrontation Clause, as guaranteed by the Sixth Amendment, when it admitted

into evidence statements that the child and her foster mother made to the therapist, as these

statements were hearsay; (2) it violated the Confrontation Clause, as guaranteed by the Sixth

Amendment, when it admitted into evidence Detective Woods' statements about what mother told

Sergeant Pilco regarding her absence from the home, as these statements were hearsay; (3) it ruled

that mother has, without good cause, been unwilling or unable within a reasonable period of time,

not to exceed twelve (12) months from the date the child was placed in foster care to remedy

substantially the conditions which led to or required continuation of the child's foster care,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Mother has three younger children who are not the subject of this appeal.

notwithstanding the reasonable and appropriate efforts of social, medical, mental health, or rehabilitative services because the mother was compliant with her visits with the child, was in therapy, took parenting classes, and complied with home-based counseling; (4) it determined that the services offered to mother were sufficient because mother was given a six-week parenting class, not afforded the opportunity to see her child for three months after the child was placed in foster care, and received counseling at Arlington County Department of Human Services (the Department) despite the recommendation that counseling occur in mother's home; and (5) it took judicial knowledge of foster care plans and records, in that these plans were not authenticated nor certified by the clerk of the court, nor did the social worker have direct knowledge of the preparation of the plans. Mother argues that the admission of the records was prejudicial because the records were proof that the Department offered services to mother. Upon reviewing the record and briefs of the parties, we conclude that the trial court did not err. Accordingly, we affirm the decision of the trial court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

The Department initially became involved with mother and child in 2008 when it received anonymous child abuse and neglect complaints. In November 2008, the Department obtained a child protective order and provided thirty hours per week of home-based counseling services to the family in order to prevent removal. Despite these services, the child continued to appear at school with bruises and was always hungry. On May 28, 2009, the Department sought an emergency removal order, and the child was placed in foster care. On June 2, 2009, the

juvenile and domestic relations district court (the JDR court) found the child to be neglected and ordered that she remain in the Department's custody.

The Department referred mother for domestic violence classes, psychological evaluation, individual counseling, group therapy, a parent-child bonding assessment, and parenting classes. The Department continued to offer home-based counseling. The Department also required mother to maintain stable, clean, and safe housing. The child initially refused to visit with mother, but then participated in supervised visitation. After the birth of her fourth child in January 2010, mother frequently missed scheduled visits.

The Department continued to provide services and work on the goal of return home until May 20, 2010, when mother was arrested for three counts of felony child endangerment, abuse and neglect for leaving her three youngest children (ages three years old, eighteen months old, and four months old) home alone for approximately four hours. Mother pled guilty to one count of felony child endangerment and served ten months in jail.[2]

The JDR court terminated mother's parental rights on November 22, 2010. Mother appealed. After hearing all of the evidence and argument, the trial court terminated mother's parental rights. This appeal followed.

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

---

[2] Mother was incarcerated from May 20, 2010, until March 25, 2011.

<u>Hearsay statements</u>

Mother argues that the trial court erred in admitting statements that the child and foster mother made to the therapist and statements that mother made to Sergeant Pilco. Mother contends that both statements were hearsay and violated the Confrontation Clause, as guaranteed by the Sixth Amendment.

We reject mother's argument that the testimony violated the Confrontation Clause under the Sixth Amendment. The Confrontation Clause applies to criminal cases, not civil cases. The Sixth Amendment states, "In all *criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (Emphasis added.)

Mother also argues that the statements made by the child and her foster mother to the therapist were hearsay and should have been excluded. The statements included those made by the child that she was afraid of her mother and that her mother would hit her. The Department explained that the statements were "not submitted for . . . [their] truth but for the actions that she [the therapist] took because of those statements." The trial court allowed the statements "for that limited purpose, not for the truth of the matter." In addition, the Department sought testimony from the therapist about a phone call that she received from the foster mother, who requested an additional meeting with the therapist because the child was distressed and "crying uncontrollably." The trial court allowed the statements, but "not for the truth of the matter but as a – as the reason for the extra visit."

"The hearsay rule excludes out-of-court declarations only when they are 'offered for a special purpose, namely*, as assertions to evidence the truth of the matter asserted*.'" <u>Manetta v. Commonwealth</u>, 231 Va. 123, 127, 340 S.E.2d 828, 830 (1986) (quoting <u>Richard Eckhart v. Commonwealth</u>, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981)) (emphasis in original). "If the court can determine, from the context and from the other evidence in the case, that the evidence

is offered for a different purpose, the hearsay rule is no barrier to its admission." Id. (citations omitted). "It necessarily follows that '[t]he hearsay rule does not operate to exclude evidence of a statement offered for the mere purpose of explaining the conduct of the person to whom it was made.'" Testa v. Commonwealth, 55 Va. App. 275, 280 n.1, 685 S.E.2d 213, 215 n.1 (2009) (quoting Winston v. Commonwealth, 268 Va. 564, 591, 604 S.E.2d 21, 36 (2004) (citation omitted)). The trial court, therefore, did not improperly admit the statements made to the therapist.

Mother also objected to Detective Woods' testimony about mother's statements to Sergeant Pilco regarding her absence from the home on May 20, 2010. Woods interviewed mother after she left her three youngest children home alone for several hours. Mother speaks Spanish, and Pilco translated for Woods. The Department argued that Woods could rely on Pilco's translation. Mother objected to Woods testifying about what another person told her that mother was saying because the statements were offered for the truth of the matter. Mother acknowledged, "And of course, the County could have bypassed this entire problem by subpoenaing Officer Pilco, which they did not." Over mother's objection, the trial court allowed the statements to come in through Woods because "it goes to the weight of the testimony." Assuming, without deciding, that the trial court erred in allowing the statements, Pilco later did testify at the hearing, and mother had an opportunity to cross-examine him regarding her statements. "[E]xtra-judicial admissions made by a party to a civil action are admissible in evidence against" that party. Prince v. Commonwealth, 228 Va. 610, 613, 324 S.E.2d 660, 662 (1985) (citations omitted). Therefore, the trial court did not err in admitting mother's statements to Pilco.

<u>Sufficiency of the evidence</u>

The trial court terminated mother's parental rights under Code § 16.1-283(C)(2).[3] Mother argues that the trial court erred in finding the evidence sufficient to terminate her parental rights because she substantially remedied the conditions which led to the child's foster care placement. Mother also contends the Department did not provide adequate services for her.

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

<u>Toms v. Hanover Dep't of Soc. Servs.</u>, 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting <u>City of Newport News Dep't of Soc. Servs. v. Winslow</u>, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The Department initially removed the child because of allegations of abuse and neglect. Since the initial removal, the Department offered numerous services to mother. The Department provided home-based services, supervised visitation, psychological evaluation, parent-child bonding assessment, domestic violence education classes, individual therapy, and parenting classes.

---

[3] A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Mother asserts that she met most of the Department's requirements. She participated in and completed the psychological evaluation and parent-child bonding assessment. She went to parenting classes and visited with the child prior to her incarceration.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992). Here, the trial court did not err in determining that the Department provided adequate services to the mother.

"The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)). Although mother testified at trial that she would have liked more parenting classes, she did not request additional services. In fact, she suspended the home-based services after the birth of her two youngest children, and she decided that she did not need to go to individual therapy.

Despite the services she received from the Department, mother continued to struggle. While the child was in foster care, mother remained unemployed and relied on her boyfriend for financial assistance. As of December 2009, mother still refused to accept responsibility for the child's placement in foster care. When her fourth child was born in January 2010, mother asked to suspend her visits with her oldest child for two months, so that mother could adjust to the baby's arrival. When she did start visiting again, she was inconsistent and inflexible with scheduling visits. On May 20, 2010, mother was arrested after she left her three youngest children home alone for several hours. Detective Woods testified about the condition of the home when he arrived:

> I noticed that the apartment was in disarray, that there were dirty
> diapers that had been literally shredded and were in pieces
> scattered on the floor. I saw empty beer bottles. I saw a nail

polish bottle that had been opened and its contents spilled out all over the place.

The coffee table had a bowl of cereal which did not appear to be made by an adult. It was a large bowl. The milk and the cereal were spilled all over the place. The milk was still sitting out. There was a chicken that had been left out on the counter. The sink was full of dishes.

* * * * * * *

The bathroom, the toilet was completely filled to the top with just feces and urine and was either clogged or had not been flushed in a very long time.

In her brief, mother argues that the Department did not provide her any services while she was incarcerated. However, mother had been charged with three counts of felony child endangerment. Even though the Department provided numerous services to mother, she still failed to learn how to be an effective parent because she left her three young children home alone in a dangerous situation. The home was dirty and unsanitary. After mother's incarceration, the Department changed its goal from return home to adoption and filed for termination of parental rights.

At the time of the trial, mother had been released from jail for approximately two months, but she still did not have stable housing or employment. There was no evidence that mother was prepared for the child to live with her.

At the time of the hearing, the child had been in foster care for approximately two years. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court did not err in finding that the evidence was sufficient to terminate mother's parental rights and that mother had not remedied the conditions that led to the child being placed in foster care.

<u>Judicial notice of the foster care plans</u>

Mother argues that the trial court erred in taking judicial notice of the foster care plans and records because they were not authenticated nor certified by the clerk and the social worker did not have direct knowledge of the preparation of the plans. She relies on Code §§ 8.01-389(A)[4] and 8.01-390(A)[5] to support her argument.

At the hearing, the Department asked the trial court to "take judicial notice of all of the prior foster care orders and plans as they are incorporated in those orders from the J&DR court." Mother objected because the social worker did not have "immediate direct knowledge" of the plans and the plans were not authenticated and may not have been submitted to the JDR court. Mother acknowledged that the trial court could take judicial notice of any court orders.[6] The trial court took judicial notice of "the records that are in the file based upon the appeal are the ones that should be in the file." The trial court further told mother that she could cross-examine the social worker "if you think that there's anything that's inaccurate about these . . . ."

In her motion to strike, mother later relied on several of the JDR court orders and foster care plans to which she previously objected. She tendered to the trial court copies of two orders from

---

[4] "The records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are authenticated and certified by the clerk of the court where preserved to be a true record." Code § 8.01-389(A).

[5] Copies of records of this Commonwealth, . . . or of any political subdivision or agency of the same, other than those located in a clerk's office of a court, shall be received as prima facie evidence provided that such copies are authenticated to be true copies either by the custodian thereof or by the person to whom the custodian reports, if they are different.

Code § 8.01-390(A).

[6] Mother's counsel stated, "I think Your Honor can take judicial notice of any court orders from the Court below . . . ."

2009 regarding mother's visitation and a copy of a foster care plan that she admitted was filed on May 14, 2010. Mother asserted that these documents supported her argument that the Department did not offer her "reasonable, appropriate services to address the abuse and neglect that led to the child entering care."

On appeal, mother contends the Department "submitted to the court foster care orders and plans . . . as proof that they had provided services to [mother]."

In her motion to strike, mother relied on the documents for the same reason that she objects to them on appeal, i.e. to prove what services, or lack thereof, the Department provided to mother. "[W]hen a litigant 'unsuccessfully objects to evidence that he considers improper and then introduces on his own behalf evidence of the same character, he waives his earlier objection to the admission of that evidence.'" Isaac v. Commonwealth, 58 Va. App. 255, 260, 708 S.E.2d 435, 437 (2011) (quoting Combs v. Norfolk & W. Ry., 256 Va. 490, 499, 507 S.E.2d 355, 360 (1998)); see also Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992). By relying on and tendering the JDR court orders and foster care plans in her motion to strike, mother waived her objection to the admissibility of the documents. Accordingly, we need not address mother's argument that the trial court erred in taking judicial notice of the documents.[7]

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.

---

[7] Even if the circuit court had erred in taking judicial notice of the foster care plans, the overall evidence (without the foster care plans) is so overwhelming in showing mother's failure to satisfy the requirements of Code § 16.1-283(C)(2), especially after her conviction and incarceration for felony child endangerment, that any such error would be harmless error. See Code § 8.01-678; Schwartz v. Schwartz, 46 Va. App. 145, 159, 616 S.E.2d 59, 66 (2005).