COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, McCullough and Senior Judge Clements
Argued by teleconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
v.        Record No. 0314-12-3                    BY JUDGE D. ARTHUR KELSEY
                                                  JULY 10, 2012

LISA WALLER BUTCHER

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

Susan M. Harris, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

Rick Boyer (Boyer Law Firm, on brief), for appellee.


Pursuant to Code § 19.2-398(A)(2), the Commonwealth appeals a pretrial order granting

a suppression motion.  The trial court held that a station house interview of a larceny suspect,

conducted nearly four months before her arrest, violated the suspect's rights under Miranda v.

Arizona, 384 U.S. 436 (1966).  Finding the trial court erred as a matter of law, we reverse the

suppression order and remand this case for trial.


I.

A grand jury indicted Lisa Waller Butcher for grand larceny, alleging she stole money

from a safe while working as a clerk at a convenience store.  Months earlier, during the

investigation of the theft, an investigator with the Campbell County Sheriff's Department asked

Butcher if she would come to the station house and answer some questions.  She agreed and

drove to the station house later that afternoon.

When Butcher arrived, the investigator advised her she was not under arrest and should

feel free to leave the interview at any time.  Butcher said she wanted to cooperate because she,

--------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

too, wanted to know what happened to the money. For approximately thirty minutes, they talked about Butcher's employment at the convenience store and her various personal circumstances. At the end of this period, the investigator briefly stepped out of the room while Butcher used the restroom. At no point was Butcher physically restrained. Nor did any other officers enter the room or speak with her.

After the break, the investigator told Butcher his investigation clearly showed she had committed the theft. Butcher initially maintained her innocence, but eventually (about twenty-seven minutes after the break) made incriminating statements. For the next fifteen minutes or so, the investigator discussed Butcher's possible motives behind the theft and confirmed that she took the money from the money box in the back of the store, disposed of the empty money box in the dumpster, and probably used the money to pay rent. See Commonwealth's Ex. 1 (Interview Audio II at 36:48, 38:55, and 40:15). At the end of the interview, the investigator gave Butcher his card and advised her that he would contact the store about "how they want to take care of, you know, this matter." Id. at 54:07. Butcher thanked the investigator and returned home.

At no time during the first or second portion of the interview did the investigator raise his voice, threaten Butcher with arrest, ask other officers to escort her to the restroom, physically restrain her, ask her not to leave, or contradict in any way his earlier statement that she was free to leave at any time. When Butcher left the interview, she neither asked permission to leave nor indicated any surprise that she was allowed to leave.

About four months later, Butcher was indicted and arrested on a capias. She moved to suppress her incriminating statements, arguing the earlier interview violated her Miranda rights. The trial court held the interview was purely consensual until the investigator expressed his view that Butcher had committed the crime. "[A]t that point," the trial court reasoned, Butcher was

not free to leave and, thus, was entitled to receive <u>Miranda</u> warnings before being questioned further. App. at 48. The Commonwealth objected to the ruling and filed this interlocutory appeal.

II.

For <u>Miranda</u> purposes, "'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." <u>Howes v. Fields</u>, 132 S. Ct. 1181, 1189 (2012) (quoted in <u>Tizon v. Commonwealth</u>, 60 Va. App. 1, 18, 723 S.E.2d 260, 268 (2012)). Such a degree of coercive danger does not exist "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect" as the perpetrator of the crime. <u>Id.</u> at 1188 (summarizing in parenthetical the holding of <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977) (*per curiam*)).

Nor is it "dispositive merely that the person questioned is not free to leave." <u>Tizon</u>, 60 Va. App. at 19, 723 S.E.2d at 268. As the United States Supreme Court recently explained:

> Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of <u>Miranda</u>. We have decline[d] to accord talismanic power to the freedom-of-movement inquiry, and have instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in <u>Miranda</u>. Our cases make clear . . . that the freedom-of-movement test identifies only a necessary and not a sufficient condition for <u>Miranda</u> custody.

<u>Tizon</u>, 60 Va. App. at 19, 723 S.E.2d at 268-69 (alteration in original) (quoting <u>Howes</u>, 132 S. Ct. at 1189-90).

<u>Miranda</u> requires warnings only when an officer interrogates a suspect subject to "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." <u>Id.</u> at 19, 723 S.E.2d at 269 (quoting <u>Brooks v. Commonwealth</u>, 282 Va. 90, 96, 712 S.E.2d 464, 467 (2011)). Even a complete, albeit temporary, seizure does not implicate <u>Miranda</u> if the

- 3 -

circumstances surrounding the detention fall short of "a *de facto* arrest." Id. (quoting Testa v. Commonwealth, 55 Va. App. 275, 283 n.5, 685 S.E.2d 213, 217 n.5 (2009)). "Fidelity to the doctrine announced in Miranda requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." Howes, 132 S. Ct. at 1192 (quoting Berkemer v. McCarty, 468 U.S. 420, 437 (1984)). "Voluntary confessions," after all, "are not merely a proper element in law enforcement, they are an unmitigated good, essential to society's compelling interest in finding, convicting, and punishing those who violate the law." Id. (quoting Maryland v. Shatzer, 130 S. Ct. 1213, 1222 (2010)).

In this case, the trial court erred as a matter of law by concluding the investigator violated Miranda.[1] Butcher voluntarily appeared for the interview. The investigator advised her she was free to leave at any time. She was never placed in physical restraints, told she was in custody or under arrest, or threatened with physical intimidation or a display of weapons. She sat comfortably in a room with a single investigator who never raised his voice. Butcher was obviously free to leave because that is just what she did. She voluntarily walked into the station house, and she voluntarily walked out.

The trial court's contrary conclusion rests solely on the fact that the investigator, during the second half of the interview, asserted his belief to Butcher that she was the thief. Standing

---

[1] Under settled principles, a defendant has the burden to prove all the elements necessary to demonstrate a Miranda violation. See United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989) (defendant has burden to establish custodial interrogation); United States v. Davis, 792 F.2d 1299, 1309 (5th Cir. 1986) (defendant has burden to establish arrest or custody); United States v. Charles, 738 F.2d 686, 692 (5th Cir. 1984) (defendant has burden to establish custodial interrogation); United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1978) (defendant must make "initial showing" of custodial interrogation before burden shifts to prosecution to prove waiver); State v. Tomasko, 681 A.2d 922, 932 (Conn. 1996) ("The defendant bears the burden of proving custodial interrogation."); Wilkerson v. State, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005) ("The mere filing of a motion to suppress does not thrust a burden on the State to show compliance with Miranda . . . unless and until the defendant proves that the statements he wishes to exclude were the product of custodial interrogation.").

alone, however, this fact did not prove Butcher "[a]t that point" was not free to leave, as the trial court assumed. App. at 48.[2] But even if it did, not being free to leave is only a necessary, but not sufficient, condition in the Miranda analysis. See Howes, 132 S. Ct. at 1189-90; Tizon, 60 Va. App. at 19, 723 S.E.2d at 269; see also Commonwealth v. Milner, 13 Va. App. 556, 558, 413 S.E.2d 352, 353 (1992) ("A temporary detention of a suspect does not necessarily constitute 'custody' for purposes of Miranda.").

To implicate Miranda, a detention must be of such a coercive nature that it approximates "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Tizon, 60 Va. App. at 19, 723 S.E.2d at 269 (citation omitted). Under this standard, "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest." Stansbury v. California, 511 U.S. 318, 325 (1994) (*per curiam*); see also Aldridge v. Commonwealth, 44 Va. App. 618, 646, 606 S.E.2d 539, 553 (2004); Harris v. Commonwealth, 27 Va. App. 554, 565 n.2, 500 S.E.2d 257, 262 n.2 (1998).[3] In short, the "fact that the investigation had focused upon the suspect *and had become accusatory* is not determinative of the question of custody." Smith v. Commonwealth, 219 Va. 455, 470, 248 S.E.2d 135, 144 (1978) (emphasis added).

---

[2] See Davis v. Commonwealth, 37 Va. App. 421, 432, 559 S.E.2d 374, 379 (2002) (noting "an allegation of criminal wrongdoing does not automatically negate a finding of a consensual encounter"); see also United States v. Hargrove, 625 F.3d 170, 179 (4th Cir. 2010) (emphasizing the assessment of "the totality of the circumstances rather than focusing on any one component of the interview").

[3] We acknowledge the relevance of an accusation of criminality to the extent its "weight and pertinence," Stansbury, 511 U.S. at 325, combines with other factors to demonstrate a restraint on the suspect's freedom of movement to the degree associated with a formal arrest. An accusation accompanied by an overwhelming show of force or intimidating threats, for example, could become quite weighty and pertinent to the Miranda custody analysis. Nothing in this case rises to that level.

In none of the controlling cases did an accusation of criminality, by itself, justify the application of Miranda. In Howes, for example, the investigator directly "confronted" the interviewee with allegations of sexual abuse. Howes, 132 S. Ct. at 1186. In Mathiason, a police officer stated at the outset of the questioning his belief that "the suspect was involved" in the burglary being investigated. Mathiason, 429 U.S. at 493. In Yarborough v. Alvarado, 541 U.S. 652 (2004), the investigator refused to accept the suspect's denial of any knowledge of a shooting. "Well I beg to differ with you," the investigator asserted, "I've been told quite the opposite and we have witnesses that are saying quite the opposite." Id. at 657.[4] Yet, none of these cases found the officer's assertion of criminality crossed the Miranda custody line. This is because "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." Mathiason, 429 U.S. at 495. Even so, "police officers are not required to administer Miranda warnings to everyone whom they question." Id.

In short, a suspect's "voluntary appearance at a police station, where he is immediately advised that he is not under arrest and from which he leaves 'without hindrance' at the end of an interview, indicates that he is not in custody 'or otherwise deprived of his freedom of action in

---

[4] See also Brooks, 282 Va. at 93, 712 S.E.2d at 465 (holding no Miranda custody where officer asked defendant "was this his money and his drugs"); Burket v. Commonwealth, 248 Va. 596, 603, 606, 450 S.E.2d 124, 128, 130 (1994) (holding no Miranda custody although detective told defendant that hair samples similar to his were found at the scene of the crime and that eyewitnesses saw him there); Garrison v. Commonwealth, 36 Va. App. 298, 302, 309, 549 S.E.2d 634, 636, 640 (2001) (holding no Miranda custody where officer told defendant "he had evidence [defendant] might have been involved in a theft"); Novak v. Commonwealth, 20 Va. App. 373, 380, 386, 457 S.E.2d 402, 405, 408 (1995) (holding no Miranda custody where defendant was told that "police had obtained defendant's fingerprints from the clothing of a victim"); Hughes v. Commonwealth, 16 Va. App. 576, 591-92, 431 S.E.2d 906, 916 (1993) (concluding defendant "was not in custody," although officer "accused him of abducting [a] child"), aff'd en banc, 18 Va. App. 510, 446 S.E.2d 451 (1994).

any significant way.'"  Garrison v. Commonwealth, 36 Va. App. 298, 309, 549 S.E.2d 634, 640 (2001) (brackets and citation omitted).  Nothing in the circumstances surrounding Butcher's interview justifies a contrary conclusion in this case.[5]

III.

Because the investigator did not violate Butcher's <u>Miranda</u> rights, the trial court erred in suppressing her incriminating statements made during the station house interview.  We reverse the suppression order and remand for trial.

<u>Reversed and remanded.</u>

---

[5] Although the trial court did not address the point, Butcher argues as an alternative ground that even without a showing of a <u>Miranda</u> violation the suppression order should be affirmed because her statements were involuntary.  While we have the power to affirm if the trial court reached the right result for the wrong reason, <u>see</u> <u>Perry v. Commonwealth</u>, 280 Va. 572, 580-81, 701 S.E.2d 431, 436 (2010), we find no basis in this record supporting Butcher's argument.  "The test to be applied in determining voluntariness is whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'"  <u>Midkiff v. Commonwealth</u>, 250 Va. 262, 268, 462 S.E.2d 112, 116 (1995) (citation omitted).  Coercive police activity "is a *necessary predicate* to the finding that a confession is not voluntary."  <u>Washington v. Commonwealth</u>, 43 Va. App. 291, 303, 597 S.E.2d 256, 262 (2004) (emphasis added).  "The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity, however, does not automatically render a confession involuntary."  <u>United States v. Braxton</u>, 112 F.3d 777, 780 (4th Cir. 1997) (*en banc*); <u>see</u> <u>also</u> <u>Hill v. Commonwealth</u>, 52 Va. App. 313, 318-20, 663 S.E.2d 133, 135-36 (2008).