UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Decker, Russell and Senior Judge Felton
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.        Record No. 1739-15-1

ROBERT MALICK, S/K/A
  ROBERT WILLIAM MALICK

MEMORANDUM OPINION[*] BY
JUDGE MARLA GRAFF DECKER
MARCH 22, 2016


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge

Kathleen B. Martin, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellant.

James O. Broccoletti (Randall J. Leeman, Jr.; Zoby, Broccoletti &
Normile, P.C., on brief), for appellee.


Robert Malick (the defendant) was indicted for second-degree murder in violation of Code

§ 18.2-32.  Pursuant to Code §§ 19.2-398 and -400, the Commonwealth appeals a pretrial ruling

granting a portion of the defendant's motion to suppress.  The circuit court concluded that two of the

defendant's statements to law enforcement officers were obtained in a way that violated the

defendant's right against self-incrimination as guaranteed by the Fifth Amendment of the United

States Constitution.  Based on this ruling, the circuit court excluded the two statements.  The

Commonwealth contends that the statements did not result from interrogation and instead were

volunteered, rendering them admissible under the Fifth Amendment.  Additionally, the

Commonwealth challenges the remedy imposed, arguing that even if the statements were obtained

in violation of the Fifth Amendment, their exclusion was not required.  We hold that the record,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

viewed under the appropriate legal standard, supports the circuit court's conclusion that the statements were elicited in a manner that violated the defendant's Fifth Amendment rights and that exclusion of the statements was the proper remedy. Consequently, we affirm the circuit court's ruling suppressing the challenged evidence, and we remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

In December 2014, Detectives Douglas Zebley and Angela Curran of the Virginia Beach Police Department were members of the department's cold case unit. In the course of that work, they identified the defendant as a suspect in a murder that had occurred in Virginia Beach twenty-four years earlier, in December 1990.

The detectives traveled to Pennsylvania and met with the defendant at his home. They had a conversation with him about J.S., a teenager who had lived across the street from where the defendant had previously resided in Virginia Beach with his parents. The defendant admitted that he remembered J.S. but claimed that he "didn't really keep up with her" after he joined the Navy in 1986. When Zebley told the defendant that they had evidence that the defendant had been "with [J.S.] prior to her death," he admitted that he "had sex" with her the night before her body was found. When Zebley asked the defendant what happened next, he answered "that he did something that he couldn't get out of and he didn't want to make any more statements" without an attorney present. The circuit court ruled that these statements made to Detectives Zebley and Curran were not obtained in violation of the Fifth Amendment and denied the defendant's motion to suppress them. The defendant does not challenge the trial court's ruling

regarding these statements, and the question of their admissibility is not before this Court on pretrial appeal.[1]

Additional evidence offered at the suppression hearing established that after the defendant invoked his right to counsel, the Virginia Beach detectives stopped the questioning. They also informed him that although he was not under arrest, they had a search warrant for a DNA sample and fingerprints. Detective Zebley explained that they had arranged for Pennsylvania state troopers to transport the defendant in order to obtain the DNA sample and his fingerprints. Zebley told him that he was "being detained until that search warrant could be served."

Pennsylvania State Troopers Richard Neiswonger and Eric Rogers arrived at the defendant's home a few minutes later. Detective Zebley told the troopers that the defendant had invoked his right to counsel. In order to obtain the evidence specified in the warrant, the troopers handcuffed the defendant and placed him in the rear seat of their police car for transport. The troopers also advised him of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), before leaving his residence. Trooper Neiswonger drove, and Trooper Rogers sat in the front passenger's seat.

The only evidence at the suppression hearing about what happened during the drive to the hospital came from the testimony of Trooper Neiswonger and the defendant. Neiswonger explained that prior to the troopers' involvement in the execution of the search warrant, the Virginia detectives had told them that the warrant related to a murder that had occurred while the

---

[1] On review of a ruling on a motion to suppress, this Court views the evidence in the light most favorable to the party who prevailed below. See Gregory v. Commonwealth, 64 Va. App. 87, 93, 764 S.E.2d 732, 735 (2014). Therefore, as to information involving the statements that the defendant made to Zebley and Curran, the portion of the motion that the circuit court denied, we view that evidence in the light most favorable to the Commonwealth. See id. However, as to the portion of the motion that the court granted, discussed *infra* in the text, we view the evidence in the light most favorable to the defendant. See id.; Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992).

defendant was in the Navy in Virginia Beach "some 20 years [earlier]." While Neiswonger and Trooper Rogers were driving the defendant to the hospital, Rogers initiated a conversation in which he asked the defendant, who "was from Pennsylvania, how [he] ended up in Virginia Beach." The defendant responded that he "was in the Navy and [his] father was in the Navy," and he and Trooper Rogers "just . . . started talking." The defendant testified that during the conversation, Rogers "asked [him] about [the victim, J.S.]." The defendant said he responded that he "need[ed] a lawyer" and "[was] not going to talk about that." According to the defendant, the conversation lasted seven to ten minutes.

Neiswonger overheard portions of the conversation between Rogers and the defendant. He testified that he "really [didn't] know" how the conversation began. Neiswonger thought that Rogers brought up the subject of the defendant's time in the Navy, but he could not recall "the first thing that [Rogers] may have said to [the defendant] about his Navy life in Virginia Beach." Despite admitting that he did not recall everything that was said, Neiswonger stated that neither he nor Rogers "question[ed]" the defendant about the case or tried to elicit any information about it. The trooper further testified that the defendant "spurted out" two "odd" statements to Rogers during the conversation. The first statement was "something to the tune of, [']It's terrible that people get away with this type of crime for a long period of time.[']" Regarding the second statement, Neiswonger testified that the defendant asked the troopers if they "had any suggestions on how to get out of this." The defendant was not specifically asked at the hearing whether he made the two "odd" statements that Neiswonger attributed to him or, if so, when he made them in relation to when Rogers asked him about J.S.

In opposing the defendant's motion to suppress the statements made to Rogers, the Commonwealth argued that the defendant volunteered the statements. Alternatively, it

contended that any involvement of the troopers in eliciting the statements did not rise to the level of police misconduct sufficient to require exclusion.

The circuit court found that the defendant made the statements to Rogers and granted the motion to suppress them. The court also denied the Commonwealth's motion to reconsider that ruling. In disposing of the two motions, the court observed that it was troubled by the fact that Trooper Rogers did not testify at the suppression hearing and that Trooper Neiswonger made conflicting statements about the conversation he overheard between the defendant and Rogers. The court also noted Neiswonger's admission that he and Rogers knew from "background investigation" that the allegations against the defendant related to the time when he was in the Navy in Virginia Beach. The court additionally observed that although the statements "on their face look as if they could be blurted out, . . . there is a conversation going on" and Neiswonger could not recall the specific comments or questions of Trooper Rogers that preceded the defendant's key responses. The court further noted the defendant's testimony that he and Rogers were having a conversation about the Navy and how the defendant ended up in Virginia Beach. The court then observed that when Trooper Rogers "asked [the defendant] about [J.S.]," the defendant said he wanted a lawyer and was "not going to talk about that." Emphasizing that Trooper Neiswonger could not recall the conversation clearly and was not the one having it, the court concluded that the Commonwealth had not met its burden of proving by a preponderance of the evidence that the statements were volunteered and not foreseeable. Accordingly, it held the Commonwealth failed to prove that the statements did not result from custodial interrogation that occurred after the defendant had invoked his right to counsel. The circuit court did not mention the Commonwealth's argument that excluding the evidence to remedy any violation of the Fifth Amendment was unnecessary, thereby implicitly rejecting that argument.

II. ANALYSIS

The Commonwealth challenges the circuit court's ruling granting the defendant's motion to suppress as it relates to the statements that the defendant made to Trooper Rogers. On review of a ruling on a motion to suppress, the appellate court is bound by the lower court's findings of fact unless "plainly wrong or without evidence to support them." Gregory v. Commonwealth, 64 Va. App. 87, 93, 764 S.E.2d 732, 735 (2014) (citing Code § 8.01-680). The trial court is not required to make explicit findings, and to the extent that it does not make such findings, this Court views the evidence on a "motion to suppress incriminating statements" made to police "'in the light most favorable to the [party who prevailed below,] and . . . [it] accord[s] [that party] the benefit of all reasonable inferences fairly deducible from that evidence.'" Id. at 92-93, 764 S.E.2d at 735 (quoting Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012)); see Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992). We review the circuit court's application of the law *de novo*. Commonwealth v. Quarles, 283 Va. 214, 220, 720 S.E.2d 84, 87 (2012).

The Commonwealth argues that the circuit court erroneously concluded that the defendant's statements to Trooper Rogers were made in response to custodial interrogation after the defendant invoked his right to counsel. The Commonwealth further contends that even if the statements were made during custodial interrogation, the evidence did not establish police misconduct sufficient to trigger the remedy of excluding the statements. Applying the proper standard of review to the trial court's findings and conclusions, we hold that the circuit court's decision to grant the challenged portion of the motion to suppress was not error.

### A. *Custodial Interrogation and the Right to Counsel*

Pursuant to the guarantees of the Fifth Amendment of the United States Constitution, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Anderson v.

Commonwealth, 279 Va. 85, 90, 688 S.E.2d 605, 607 (2010) (quoting U.S. Const. amend. V). In order to protect this right, when law enforcement officers question a suspect who is in custody, they must first provide the suspect with appropriate warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Quarles, 283 Va. at 220, 720 S.E.2d at 87. Those warnings include the right to an attorney and to have that attorney present during questioning. Id. If a "suspect invokes the right to counsel, the interrogation must cease until an attorney has been made available to the suspect or the suspect reinitiates the interrogation" pursuant to the terms set out in Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), and its progeny. Id. The holding in Edwards requires proof, additionally, that the accused knowingly, intelligently, and voluntarily waived the previously asserted right to counsel. Ferguson v. Commonwealth, 52 Va. App. 324, 335-36, 663 S.E.2d 505, 510-11 (2008) (*en banc*). "If *the police* initiate a subsequent interrogation, 'the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial' . . . . This rule is 'designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights.'" Quarles, 283 Va. at 220 n.3, 720 S.E.2d at 87 n.3 (emphasis added) (citation omitted) (quoting McNeil v. Wisconsin, 501 U.S. 171, 177 (1991)).

The rule against police reinterrogation applies to both "express questioning" and "its functional equivalent." Id. at 220-21, 720 S.E.2d at 87-88 (quoting Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980)). The functional equivalent of express questioning includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 221, 720 S.E.2d at 88 (quoting Innis, 446 U.S. at 301). Consequently, incriminating responses of an accused that are the foreseeable result of non-routine police questioning are treated as resulting from interrogation. Id. at 221-22, 720 S.E.2d at 88. Conversely, "if a suspect's statement is 'not foreseeable, then it is volunteered.'" Testa v.

- 7 -

Commonwealth, 55 Va. App. 275, 284, 685 S.E.2d 213, 217 (2009) (quoting Watts v. Commonwealth, 38 Va. App. 206, 217, 562 S.E.2d 699, 705 (2002)).  "[V]olunteered statements of any kind are not barred by the Fifth Amendment . . . ."  Smith v. Commonwealth, 65 Va. App. 288, 296-97, 777 S.E.2d 235, 239 (2015).  Accordingly, even if police questioning is inappropriate, statements that are nonresponsive qualify as volunteered, and their use does not violate the Fifth Amendment.  See Testa, 55 Va. App. at 283-84, 685 S.E.2d at 217. Additionally, it is "the content of *the entire statement* in light of the circumstances that controls whether it was functionally the equivalent of interrogation."  Quarles, 283 Va. at 222, 720 S.E.2d at 88 (emphasis added).  Finally, the prosecution bears the burden of proving the admissibility of the incriminating statements by a preponderance of the evidence.  See, e.g., Colorado v. Connelly, 479 U.S. 157, 168-69 (1986).

An incriminating statement that results from subtle compulsion, such as one made in response to a conversation between two officers that is merely conducted in the presence of an arrestee, has been classified by the United States Supreme Court as volunteered rather than the functional equivalent of interrogation.  See Quarles, 283 Va. at 223, 720 S.E.2d at 89 (citing Innis, 446 U.S. at 303 (involving a conversation about child safety between officers transporting a murder suspect, to which the suspect responded by leading the officers to the murder weapon)). However, where an officer in a confined space with the arrestee asks him direct questions that are "clearly intended to elicit [incriminating] information"—not mere routine "booking" questions—the questions constitute custodial interrogation.  Pearson v. Commonwealth, 221 Va. 936, 943-44, 275 S.E.2d 893, 898 (1981) (inquiring about the location of possible evidence after arraignment and processing had been completed); see also Timbers v. Commonwealth, 28 Va. App. 187, 197-99, 503 S.E.2d 233, 237-38 (1998) (holding that where an officer who received a name from an arrestee during the routine booking process and later, upon learning that

- 8 -

the name was probably false, confronted her in her holding cell to question her about "her real identity," the officer engaged in interrogation or its functional equivalent).

Here, it is undisputed that the defendant invoked his right to counsel while speaking with Detectives Zebley and Curran and that the detectives conveyed this information to the troopers when they took custody of him. It is also undisputed that the troopers knew prior to transporting the defendant that the criminal allegations the detectives were investigating related to the time when the defendant was in the Navy in Virginia Beach. Additionally, the circuit court found that the defendant made the statements at issue during the transport by the troopers. The court further observed, based on the nature of the statements themselves, that they "could [have] be[en] blurted out" without any sort of encouragement or provocation. However, contrary to the wording of the Commonwealth's assignment of error, the circuit court's decision suppressing the statements that the defendant made to Rogers was not based on what the Commonwealth *proved*. It was based, instead, on what the court found that the Commonwealth *failed* to prove. The court found a lack of affirmative evidence of the precise context in which the defendant made the statements. Based on that lack of context, the court held that the Commonwealth failed to meet its burden of proving that the statements were volunteered rather than the result of interrogation or its functional equivalent.

We hold that the evidence in the record, viewed under the proper standard of review, supports this conclusion. The evidence establishes that Trooper Rogers, who knew the crime at issue occurred while the defendant was *in the Navy in Virginia Beach*, initiated a conversation with the defendant, who had already invoked his right to counsel, about the defendant's time *in the Navy in Virginia Beach*. Trooper Rogers was not present to testify at the suppression hearing, and Trooper Neiswonger testified that he overheard only parts of the conversation between Rogers and the defendant. Further, the record shows that in the course of that

- 9 -

seven-to-ten-minute conversation, Trooper Rogers specifically asked the defendant about the victim, J.S.[2] Additionally, the conversation occurred as the defendant was being transported for the purpose of providing a forced DNA sample and fingerprints that might implicate him in the death of J.S. The circuit court specifically observed that it was troubled by Rogers' absence from the hearing and the resulting lack of information regarding the full context in which the statements at issue were made. Finally, the evidence failed to establish to the satisfaction of the circuit court, the finder of fact, what questions immediately preceded the defendant's challenged statements to Rogers or whether the defendant made those statements before or after Rogers asked the defendant about J.S.

None of the circuit court's factual findings were plainly wrong or without evidence to support them. In the absence of more detailed information regarding the precise context in which the defendant made the statements at issue, the evidence supports the conclusion that the Commonwealth failed to prove "the content of the entire [conversation]." Based on the record before it, the circuit court was unable to determine whether the circumstances in which the defendant made the statements were the functional equivalent of interrogation. See Quarles, 283 Va. at 222, 720 S.E.2d at 88; see also Jenkins v. Commonwealth, 244 Va. 445, 453, 423 S.E.2d 360, 365 (1992) (upholding the denial of a motion to suppress where an audio recording established that a murder suspect being transported by officers initiated discussions "by asking such questions as: 'Did you all charge me with capital or what?' and 'When did you all find the bodies?'").

Thus, we conclude as a matter of law, based on the circuit court's subsidiary findings of fact, that the Commonwealth failed to prove that the defendant's statements to Rogers were

---

[2] The circuit court did not make an express finding either accepting or rejecting the defendant's testimony on this point. Therefore, the evidence viewed under the proper standard, is that Trooper Rogers asked the defendant about the victim.

volunteered.[3]  Accordingly, the statements, which were made after the defendant invoked his right to counsel, were obtained in a way that violated the defendant's Fifth Amendment rights.

### B. Proper Remedy for the Fifth Amendment Violation

The Commonwealth contends that the evidence does not establish police misconduct sufficient to trigger exclusion of the defendant's statements to Rogers made in violation of his Fifth Amendment rights.  It relies on the holding in Herring v. United States, 555 U.S. 135, 144 (2009), rendered in the context of a violation of the Fourth Amendment, for the proposition that exclusion is the appropriate remedy only if "police conduct [is] sufficiently deliberate that exclusion can meaningfully deter it[] and sufficiently culpable that such deterrence is worth the price paid by the justice system."  The Commonwealth contends that the defendant's statements were not "reasonably foreseeable" and, as a result, that exclusion would not serve as a deterrent.

We have already concluded that the evidence supports the circuit court's finding that the Commonwealth failed to prove that the defendant volunteered the statements.  This means, conversely, that the Commonwealth failed to meet the burden of proving that the statements were not reasonably foreseeable by Officer Rogers.  See Testa, 55 Va. App. at 284, 685 S.E.2d at 217.  If the evidence is insufficient to prove foreseeability for purposes of the merits analysis, it is equally insufficient to prove foreseeability for purposes of establishing that exclusion is not the required remedy.  To the contrary, because the Commonwealth failed to establish that the statements were not "compelled" and, thus, did not violate the Fifth Amendment's substantive guarantee, exclusion is required.  See Kansas v. Ventris, 556 U.S. 586, 590-91 (2009) (recognizing that exclusion of

---

[3] It is clear from the parties' arguments, as well as the court's statements and rulings, that they used the terms "volunteered" and "voluntary" somewhat interchangeably.  The record makes clear, however, that the only issue in dispute in the circuit court and in this Court is whether the defendant's statements were the foreseeable result of custodial interrogation or its functional equivalent or, instead, were volunteered.  Thus, we do not consider the separate issue of whether the accused made a voluntary waiver of his right to counsel.  See, e.g., Ferguson, 52 Va. App. at 335-36, 663 S.E.2d at 510-11.

evidence that violates the Fifth Amendment is required "to avoid violation of the [amendment's] *substantive* guarantee" but that the Fourth Amendment "says nothing about excluding the[] fruits [of unreasonable searches and seizures] from evidence" and that the remedy of exclusion for violation of that amendment "comes by way of [judicially created] deterrent sanction" (emphasis added)).

In short, the undisputed evidence proved that the defendant made the challenged statements after the defendant invoked his right to counsel. Additionally, under the evidence viewed in the light most favorable to the defendant, he made the statements during a conversation initiated by Trooper Rogers, and Rogers directed the defendant's attention to the time and place where the murder occurred and then specifically asked the defendant about the victim. Based on the Commonwealth's failure to provide sufficient additional context to prove that the statements were volunteered rather than a foreseeable result of Rogers' re-initiation of interrogation, the text of the Fifth Amendment itself required exclusion of the resulting statements.

## III. CONCLUSION

We hold that the record, viewed under the appropriate legal standard, supports the circuit court's conclusion that the challenged statements of the defendant were elicited in a manner that violated his Fifth Amendment rights and that exclusion of the statements was the proper remedy. Consequently, we affirm the circuit court's ruling suppressing the challenged evidence, and we remand the case for further proceedings consistent with this opinion.

<u>Affirmed and remanded.</u>